## MOSES DAVIS *v.* MILDRED GERHARD ET AL.

[No. 533, September Term, 1976.]

*Decided March 11, 1977.*

The cause was argued before MOYLAN, MENCHINE and MOORE, JJ.

*Moses Davis* for appellant.

*John E. Bohlen, Jr.,* for appellees.

MOORE, J., delivered the opinion of the Court.

Appellant, Moses Davis, is a member of the Bar and is co-executor of the estate of Herbert C. Pollard, who died on April 7, 1965, leaving, it appears, a modest estate of approximately $45,000. Mr. Davis and Mrs. Grace Ballistreri of Waycross, Georgia, qualified as personal representatives of the estate, we were told, on April 13, 1965. Mrs. Ballistreri is one of the appellees, the other appellee being her daughter, Mildred Gerhard, the sole beneficiary under the will. By Order of the Orphans' Court for Baltimore County, dated April 13, 1976, a prior allowance to Mr. Davis of

counsel fees in the amount of $5,000 was reduced by 50%; and he was also assessed the sum of $1,079.13 as interest on the proceeds of sale of real estate which had not been deposited in an interest-bearing account. It is from that Order that this appeal has been taken.[1]

We find it incredible that a relatively simple estate has been so long in the process of administration; and we find it equally incredible that the record before us is so grossly deficient. We dismiss the appeal *sua sponte* pursuant to Maryland Rules 1026 and 1035, and we explain our reasons.

I

From such "record", as has been transmitted from the Orphans' Court of Baltimore County,[2] we glean that disharmony has prevailed between Mr. Davis and the appellees. Furthermore, while it is difficult to understand the long duration of the proceedings below, we perceive that appellant Davis pursued, for a substantial period of time, in the United States District Court for the District of Maryland and in the Court of Appeals for the Fourth Circuit, an action against the Equitable Life Assurance Society of America in an attempt to recover upon a contract of annuity in the amount of approximately $11,000 on behalf of Mr. Pollard's estate. This action was commenced in December, 1967 and was not concluded until some time in 1973, with a result favorable to the insurance company, which received a judgment for costs. Toward the conclusion of the litigation and upon a remand from the Fourth Circuit Court of Appeals to the district court, Mr. Davis was required to engage other counsel because it became necessary for him to testify as a witness.

---

1. The statutory authority for the appeal is Md. Code (1974), Cts. & Jud. Proc. Art., § 12-501 which supersedes Code 1957, Art. 5, §§ 9 and 10. Section 12-501 provides: "A party may appeal to the Court of Special Appeals from a final judgment of an orphans' court." The term "party" is not used in a technical sense but means anyone whose interest the Order has a direct tendency to affect adversely. *See* Meyer v. Henderson, 88 Md. 585, 41 A. 1073 (1898); *see also* Wright v. Nugent, 23 Md. App. 337, 328 A. 2d 362 (1974), *aff'd*, 275 Md. 290, 338 A. 2d 898 (1975).

2. The nature and deficiencies of the record are explained *infra*, Point II.

In April, 1973 appellant filed a petition in the Orphans' Court for counsel fees in the aggregate amount of $7,500 for legal services in connection with the claim against Equitable Life. On October 25, 1973, the Orphans' Court entered an Order awarding him the sum of $5,000 and his co-counsel, Donald Rothman, the sum of $2,500.

More than nine months later, on June 13, 1974, appellees, Gerhard and Ballistreri, as sole heir and co-executor, respectively, filed "Exceptions to Counsel Fees and Final Accounting" on the ground that (a) the sums claimed for counsel fees were "excessive and not properly allowable out of the estate"; and (b) because the exceptants "have never been appraised [sic] of the accounting in the estate and object to several claims." [3]

Under date of June 14, 1974, detailed answers to the exceptions were filed by the appellant. In this response, Mr. Davis undertook to ventilate a number of complaints against the appellees, and characterized their exceptions as "an effort on the part of my co-executor, the mother of the legatee, M' Gehard [sic], and with consent of the Legatee to get a reduction of my fee for a valuable service rendered to the estate, to their advantage and to my loss."

It appears from the Record that thereafter the Orphans' Court, on July 18, 1974, adopted an Order that the papers concerning the estate of Herbert C. Pollard be forwarded to a court auditor. On the papers before us, we cannot discern the precise reason for the audit, but a memorandum dated August 18, 1975 (more than a year after the audit was ordered) indicates that the audit was singularly unproductive. The memorandum was signed by Michael J.

---

**3.** Because of the date of Mr. Pollard's death, April 7, 1965, the questions involved in the estate are to be determined under the law as it existed prior to January 1, 1970. Code (1969 Repl. Vol.) Art. 93, § 12-102 (a), now Estates and Trusts Article, § 12-102 (a). Section 7-502 of Art. 93 and of the Estates and Trusts Article would have made the Orphans' Court order final and binding if notice had been given pursuant to § 7-502 (a) and a request for a hearing had not been filed within 20 days of the notice, in the absence of fraud, material mistake or substantial irregularity. These provisions, however, were not applicable and, at all events, it appears that no prior notice was given by appellant of his request for counsel fees to either of the appellees.

Gibson, auditor, and concluded with the statement that an account could be prepared as soon as the cash in the estate was reconciled and the amount of expenses determined, but "right now we don't even know how much is in the estate."

On July 2, 1975, the Register of Wills for Baltimore County mailed a notice of hearing in the estate on the subject of "Exceptions to Counsel Fees and Final Accounting" to be held on August 19, 1975 before the Orphans' Court.

The scheduled hearing took place before Judges Mensh, Hamilton and Page. Appellant was present in his own behalf and the appellees were represented by John E. Bohlen, Jr., Esq. A transcript of these hearings is contained in the Record but not in the Record Extract. Testimony was received from the court auditor concerning certain stock transactions in the estate and it was disclosed that appellant had received compensation in the amount of $4,000 for legal services on December 5, 1966.[4] A check signed by him and his co-executor on that date, payable to him, was never cashed. Appellant's explanation was that he had sold stock in the estate, had paid himself from the proceeds and merely marked the aforesaid check "paid." Judge Hamilton reproved the appellant stating:

> "This $4,000 check is not good bookkeeping and not good practice. Mr. Gibson, I have just ordered Mr. Davis to deposit $4,000 of his money into the estate account, then he can pay himself properly. He paid himself out of the sale of stock. I told him it is illegal. I want the money from him put in an account in the amount of $4,000, then he can draw this check properly out as his fee. Then the record will show the stock sale money."

Thereafter the hearing was recessed to be set down at a later date, at which time appellant was to produce certain deposit slips. The subsequent hearing, according to unsigned

---

4. However, the record does not disclose the nature of the legal services for which the appellant received compensation.

notes in the Record ("Petition Docket Proceedings — Notes From Court"), was held on October 10, 1975. This was an "informal hearing" during which Mr. Davis presented requested copies of checks to the court. The "notes" indicate that another hearing was to be scheduled on the exceptions at which Mrs. Ballistreri was to be present and at which Mr. Davis would present a copy of the final accounting with the "exception of counsel fees which will be determined at the hearing."

So far as appears, no court action took place between October 10, 1975 and January 20, 1976. On the latter date, the Register of Wills mailed another notice of hearing for Wednesday, February 18, 1976, at which time Mr. Davis was to present a final account and the court would make a determination of his counsel fees.[5]

The scheduled hearing was postponed for 30 days until March 18, 1976. The hearing on the postponed date did take place, according to "Notes From Court", which recite:

> "The Court Directed that Mr. Davis' Counsel Fee be reduced to one half of what he requested (      ) [sic]. Also an assessment of 5% interest on the money from the sale of the house must be paid. Mr. Bohlen will draw up and submit the order."

There is no transcript either in the Record Extract or in the Record of the March 18, 1976 hearing.[6] We are totally uninformed as to who was present; what, if any, documents were received; what testimony, if any, was given with respect to appellant's counsel fees or whether or not appellant at that time presented a final account in the estate. All we know is that, as a result of the hearing, the three members of the Orphans' Court adopted an Order on

---

5. The counsel fee payable to Mr. Rothman had, it appears, properly been paid, following a hearing before Judges Mensh and Hamilton on July 16, 1974.

6. Of course, if a transcript is not in the Record, it may not be included in the Record Extract. See Community Realty Co. v. Siskos, 31 Md. App. 99, 354 A. 2d 181 (1976).

April 13, 1976 from which appellant has prosecuted this appeal. The complete text of that Order is as follows:

"IT IS HEREBY ORDERED, this 13th day of April 1976, after a hearing of all the evidence on counsel fee, that Moses Davis be awarded an additional counsel fee of $2500.00 on his claim for services, less the amount of bank interest that would be due, due to the fact that the $10,791.34 from the sale of the house was not deposited in an interest bearing account, accounting from March 1, 1974 to this date at 5% totaling $1,079.13.

"IT IS FURTHER ORDERED that the final accounting and distribution of this Estate is to be made within thirty (30) days after the date of this Order."

## II

The above recitals are based upon photostatic copies — not original papers — of selected documents in the administration proceedings below and submitted to us as the Record on this appeal. The basis for the selection is nowhere explained. We find no stipulation between counsel. Neither is there an Order, in accordance with Rule 1026 d., of the lower court stating that it was necessary that the original papers be kept in the lower court pending the appeal; and, of course, there is the glaring omission of any transcript of the final proceedings before the Orphans' Court on March 18, 1976. Under these circumstances, we do not have *any* Record (not to mention Record Extract) upon which to make a determination with respect to the lower court's alleged error in making an assessment against the appellant for $1,079.13 interest, as provided in the Order appealed from.

With respect to the reduction in appellant's counsel fees, we tend strongly to the view that such "record" as has been submitted prevents us from making a determination, as requested by appellant, that the Orphans' Court erred. The

allowance of counsel fees by an orphans' court requires the exercise of judgment and discretion and ordinarily such an award will not be disturbed on appeal unless an abuse of discretion has been shown.[7] *Wolfe v. Turner,* 267 Md. 646, 653, 299 A. 2d 106, 109 (1973); *Riddleberger v. Goeller,* 263 Md. 44, 55, 282 A. 2d 101, 107 (1971); *Lusby v. Nethken,* 262 Md. 584, 586, 278 A. 2d 552, 553-54 (1971); *American Jewish Joint Distribution Comm. v. Eisenberg,* 194 Md. 193, 199-200, 70 A. 2d 40, 42 (1949).

Here, the court had already permitted the payment to appellant in 1966 of counsel fees of $4,000; the sum of $2,500 to Mr. Rothman and, in the Order appealed from, an additional allowance to appellant of $1,420.87 ($2,500 minus interest assessed at $1,079.13) was authorized. We also observe that appellant received on January 17, 1973 a commission in the sum of $1,472.16. When it is then considered that the litigation which gave rise to appellant's request for additional counsel fees resulted only in five years' delay and no recovery to the estate, it becomes quite apparent that to find an abuse of discretion on the part of the Orphans' Court would be a travesty of justice.

We do not, however, decide the merits of this appeal. Rather, pursuant to the authority granted to us by Maryland Rules 1035 and the related rule previously cited, we dismiss this appeal *sua sponte* because what has been submitted to us as a Record represents a flagrant and inexcusable violation of the rules. *See Kemp-Pontiac-Cadillac, Inc. v. S & M Construction Co.,* 33 Md. App. 516. 365 A. 2d 1021 (1976).

We are also constrained to observe that these proceedings reflect no credit upon the Orphans' Court for Baltimore County which should consider seriously the imposition of appropriate sanctions, including the possible removal of

---

7. The statutory provisions concerning counsel fees as applied to this estate are found in Code (1964 Repl. Vol.) Art. 93, §§ 6 and 10. Allowance of counsel fees for estates administered after January 1, 1970 is governed by Estates & Trusts Art., § 7-602 (1974), formerly Art. 93, § 7-602 (1969 Repl. Vol.).

both personal representatives, in this estate of less than $50,000 [8] which is now entering upon its 12th year of administration.

> *Appeal dismissed; appellant to pay the costs; mandate to issue forthwith.*

---

**8.** The Record Extract (and the Record) contains only a copy of the Second Administration Account, approved by the Orphans' Court on March 29, 1973 reflecting $44,259.63 as "Total Estate To Be Accounted For."