648 A.2d 688

Raymond MERLING, Personal Representative
of the Estate of Sara E. Holliday

v.

Joyce MERLING.

No. 12, Sept. Term, 1994.

Court of Appeals of Maryland.

Oct. 21, 1994.

Allan J. Culver, Jr., Bel Air, for petitioner.

Christian B. Wilson, Bel Air, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

RODOWSKY, Judge.

This caveat case presents a hearsay question. The declarant, a legatee of one-half of the residuary estate, if any, under the challenged will, was neither personal representative of the decedent's estate nor a participant in the caveat proceedings. The Court of Special Appeals held that a witness's testimony, recounting a statement by the declarant, was substantively admissible in support of the caveat, as the statement of a party opponent. *Merling v. Merling,* 98 Md.App. 243, 633 A.2d 403 (1993). For the reasons set forth below, we hold that the non-participating legatee-declarant was not a party to the caveat proceeding. Consequently, the exception to the hearsay rule relied upon by the Court of Special Appeals in this case does not apply here.

The caveat proceeding underlying the evidentiary issue involves the will of Sara E. Holliday (Holliday). While resid-

ing in Scottdale, Westmoreland County, Pennsylvania, Holli-
day, a widow, executed a will dated September 8, 1982 (the
Pennsylvania Will). With the exception of four bequests of $1
each, that will gave all of Holliday's estate to three of her
great-grandchildren in equal shares, and that will named the
respondent, Joyce Merling (Joyce), as executrix. Joyce is the
former wife of the petitioner, Raymond Merling (Raymond), a
grandson of Holliday.

In October 1986 Holliday, then eighty-four years old, re-
quired the removal of cataracts. She arranged with Raymond
to live in his home in Joppa, Harford County, Maryland during
the period of postoperative, in-home care. On October 31
Holliday executed a power of attorney to Raymond that had
been prepared at her request by Maryland counsel. Shortly
thereafter, Raymond, with the assistance of his brother,
George Merling (George), managed Holliday's affairs and ar-
ranged for her medical care.

On November 5, 1986, Holliday executed a new will, pre-
pared by the same Maryland counsel (the Maryland Will).
Under the new will, Holliday left her entire estate to Ray-
mond and to George "share and share alike, one-half to each."
Raymond is appointed personal representative under the Ma-
ryland Will.

Holliday fell at Raymond's home on December 15, 1986 and
was taken to Fallston General Hospital. Examination re-
vealed that she had suffered a stroke and that she had a brain
tumor. She was transferred to a nursing home in Western-
port, Allegany County, Maryland where she died on February
17, 1987. There was no immediate probate of the Maryland
Will.[1]

---

1. A judge of the Circuit Court for Harford County, sitting as the
Orphans' Court in the matter of Holliday's estate prior to the caveat
trial, had filed a written opinion rejecting a jurisdictional challenge by
Joyce. That opinion, in part, said:

"In early 1987, [Raymond], acting as his grandmother's attorney-
in-fact, sold her house in Scottdale for $10,000.00 to one Carol L.
Merling (the record does not show her relationship, if any, to the
Decedent). He also sold all of the Decedent's tangible personal

In March 1990 Joyce discovered an executed duplicate of the Pennsylvania Will. The Register of Wills for Westmoreland County, Pennsylvania on April 9, 1990 granted letters testamentary to Joyce to administer Holliday's estate under the Pennsylvania Will. In June 1990 Raymond obtained an order of the Register of Wills for Harford County granting administrative probate to the Maryland Will. Then, in October 1990 Joyce filed the instant caveat to the Maryland Will.

Maryland Code (1974, 1991 Repl.Vol.), § 5–207(b) of the Estates and Trusts Article (ET) provides that "[i]f [a] petition to caveat is filed ... after administrative probate, it has the effect of a request for judicial probate."[2] A petition for judicial probate must advise the register of wills of the names and addresses of all interested persons. ET § 5–403(a). Joyce's petition identified as interested persons Raymond, George, Holliday's three great-grandchildren who were beneficiaries under the Pennsylvania Will, and two other great-grandchildren of Holliday who, together with Raymond and George, were each given $1 under the Pennsylvania Will. The Register of Wills was obliged to give notice of Joyce's caveat to the interested persons listed in her petition. ET § 5–403(a). That notice would have been both by restricted delivery mail, postage prepaid, return receipt requested and by publication. ET §§ 5–403(a) and 1–103(a).

Raymond, as personal representative of Holliday's estate, filed an answer to the petition to caveat. Raymond, as personal representative, framed issues and requested their transmittal to a court of law for trial by jury. Raymond, as personal representative, was Joyce's adversary in the trial of the caveat case. Raymond's brother, George, the legatee of the other half of the residuary estate under the Maryland Will, did not answer the caveat petition and did not participate

---

property and deposited her funds in the accounts in Maryland in which he had named himself and his grandmother as joint owners."

**2.** Title 6, "Settlement of Decedents' Estates," Chapters 100 through 500 of the Maryland Rules of Procedure took effect and applied to all estates of decedents opened on or after January 1, 1991.

in the proceedings. George did not testify, but there is no evidence that George was unavailable as a witness.[3]

The caveat case came on for trial before a jury in May 1993. Raymond moved *in limine* to exclude the testimony of a witness, Carla Cunningham (Cunningham), who had been a business partner of George. Joyce proffered that Cunningham would testify that George had indicated in 1986 that he and Raymond knew that Holliday was troubled by bad vision and almost incoherent when the Maryland Will was executed. Joyce further proffered that Cunningham would testify that George had said that Holliday was admitted to a nursing home in Westernport to discourage visits by Joyce and her children and discussions of Holliday's will. The motion *in limine* was granted.[4]

The jury's verdict on the issues submitted to it was entirely favorable to Raymond and sustained the Maryland Will. Joyce appealed to the Court of Special Appeals contending, *inter alia,* that the Cunningham testimony had been improperly excluded.

The Court of Special Appeals reversed and remanded. That court considered three theories for the possible admissibility of the Cunningham testimony. A factor in each theory was whether George was a party to the caveat proceeding. First, the court assumed George was not a party, and it considered whether the Cunningham testimony would be admissible under the hearsay rule exception for statements contrary to the declarant's pecuniary interest. That exception could not apply because there was no evidence that George was unavailable as a witness, and the hearsay exception for a statement against interest requires "that the declarant be unavailable at the time of trial." *Aetna Casualty & Sur. Co.*

---

3. This case was presented to the Court of Special Appeals on an agreed statement of facts pursuant to Maryland Rules 8–207(b) and 8–413(b).

4. The Court of Special Appeals held that Joyce's objection to this ruling was preserved. That holding is not before us.

*v. Kuhl,* 296 Md. 446, 456, 463 A.2d 822, 828 (1983). *See also* Maryland Rules of Evidence, Rule 5–804(a) and (b)(3).[5]

The intermediate appellate court, continuing to assume that George was not a party, next considered whether his statement was admissible through Cunningham against Raymond on the theory that Raymond and George were either co-conspirators or joint owners of any distribution to be made under the residuary clause of the Maryland Will. The Court of Special Appeals held that there was no probative evidence of a conspiracy, and Joyce has not sought review by this Court of that holding.

The Court of Special Appeals also held that "George and Raymond took separately, not jointly, under the will of Sara E. Holliday; the bequest of the residuary estate was not to the two of them jointly, but one-half to each of them." 98 Md.App. at 253, 633 A.2d at 408. By a conditional cross-petition, which we granted, Joyce has preserved the question of whether Cunningham's testimony was admissible "under [the] hearsay rule exception for admission by one in joint interest with [a] party opponent...."

■ The Court of Special Appeals was correct in rejecting joint interest as a ground of admissibility. The privity or identity of interest exception is derived from the law of property. 2 *McCormick on Evidence* § 260, at 170 (J. Strong 4th ed. 1992). Wigmore explains that the exception is a "question of identity of title [that] depends obviously upon the substantive law of property." 4 *Wigmore on Evidence* § 1081, at 201 (J. Chadbourn ed. 1972). "Where a title is created as a *joint interest* and by a single legal act, it would seem that the admissions of any one of the holders would be receivable against another as party." *Id.* at 205 (footnote omitted). But, "[i]t seems also clear, and is conceded on all hands, that a *codevisee* or *colegatee* does not hold by a joint title, and

---

**5.** Although the Maryland Rules of Evidence were not effective until July 1, 1994, "Rule 5–804(b)(3) is declarative of the Maryland case law...." L. McLain, *Maryland Rules of Evidence* § 2.804.4.c.iii, at 283 (1994).

therefore his admissions cannot be used to affect another."
*Id.* (footnote omitted).[6]

The third and final theory of admissibility considered
by the Court of Special Appeals was whether George was a
party to the caveat action so that Cunningham's testimony
would be admissible as the statement of a party opponent to
Joyce. The court held that George was a party. It essential-
ly reasoned that, if the caveat had resulted in nullifying
probate of the Maryland Will, George would have had a right
to appeal. The court considered Md.Code (1974, 1989 Repl.
Vol.), § 12–501 of the Courts and Judicial Proceedings Article
(CJ) as authorizing such an approach. That statute provides
that "[a] party may appeal to the Court of Special Appeals
from a final judgment of an orphans' court." In its *Merling*
opinion the intermediate appellate court cited *Davis v. Ger-
hard,* 35 Md.App. 243, 370 A.2d 1140 (1977), which said that
"[t]he term 'party' is not used [in CJ § 12–501] in a technical
sense but means anyone whose interest the Order has a direct
tendency to affect adversely." *Id.* at 244 n. 1, 370 A.2d at
1141 n. 1. *Davis* cited, *inter alia, Meyer v. Henderson,* 88
Md. 585, 41 A. 1073 (1898), *reargument denied,* 88 Md. 591, 42
A. 241 (1899). The Court of Special Appeals in its *Merling*
opinion described *Meyer* as "addressing a slightly different
issue" than *Merling,* and as holding "that a legatee under a
will that was revoked in a caveat proceeding was deemed a
party entitled to appeal the decision of the orphans' court."
98 Md.App. at 256, 633 A.2d at 410. This was because

---

**6.** Even if Joyce had successfully demonstrated that George and Ray-
mond took the residuary estate as joint owners, the victory seemingly
would have been short lived. The May 1993 trial of this caveat case
was governed by the Maryland common law of evidence which recog-
nized the joint owner-joint obligee exception to the hearsay rule. *See
McBriety v. Phillips,* 180 Md. 569, 26 A.2d 400 (1942). Any retrial after
July 1, 1994 ordinarily would be governed by the Maryland Rules of
Evidence. Maryland Rule 5–803(a) "follows the federal approach of
not including under the rubric of party admissions certain statements
which so qualify under the common law, currently followed in Mary-
land: ... [including] statements by one jointly holding an interest with
the party." L. McLain, *Maryland Rules of Evidence* § 2.803.4h, at 251
(1994).

Md.Code (1888), Art. 5, § 58, involved in *Meyer*, did not use the term "party" in the technical sense of a party of record. *Id.*

Stating that the holdings of *Meyer* and *Davis* required it to do so, the Court of Special Appeals in the instant matter adopted the following rule: "A beneficiary under a will who does not appear or respond to a caveat is nevertheless deemed a party to the caveat suit for all purposes, including admissibility in evidence of an admission by that party as an exception to the hearsay rule." 98 Md.App. at 257, 633 A.2d at 410.

Raymond petitioned this Court for the writ of certiorari, and Joyce, by a conditional cross-petition, raised the issue that we have decided, *supra*. We issued the writ, primarily to review the above-quoted rule announced by the intermediate appellate court.

In our opinion, it does not follow from the fact that an appeal is allowed to a non-participating legatee, aggrieved by an order of an orphans' court, that a non-participating legatee is a party opponent, for the purpose of the hearsay exception at issue here, in a caveat case tried on issues transmitted to a court of law. CJ § 12–501 deals with orders of an orphans' court. *Davis v. Gerhard*, 35 Md.App. 243, 370 A.2d 1140, was a direct appeal from an orphans' court to the Court of Special Appeals under CJ § 12–501 and involved the amount of fees allowed to counsel by the orphans' court. Appeals to the Court of Special Appeals in caveat cases involving transmitted issues are not appeals from an orphans' court. They are appeals from the determination in the court of law of the issues transmitted to a circuit court by an orphans' court pursuant to ET § 2–105(b).[7] "After the determination of the

---

7. ET § 2–105 in part reads:
    "(a) *Determination of an issue of fact.*—In a controversy in the court, an issue of fact may be determined by the court.
    "(b) *Transfer of determination to law court.*—At the request of an interested person made within the time determined by the court, the issue of fact may be determined by a court of law. When the request is made before the court has determined the issue of fact, the court shall transmit the issue to a court of law."

issue[s], ... the [orphans'] court shall enter an appropriate judgment or decree." ET § 2–105(c). But, in issues cases the appeal is from the circuit court's determination of the issue. The right is conferred by CJ § 12–301, generally conferring a right of appeal on "a party ... from a final judgment entered in a civil or criminal case by a circuit court." Specifically, a party may appeal a determination by a court of law of issues transmitted from an orphans' court because "[t]he right of appeal exists from a final judgment entered by a [circuit] court in the exercise of original, special, limited, statutory jurisdiction...." CJ § 12–301.

That the procedure is as above described was clearer in the predecessor statutes to CJ § 12–301. Following the revision of the statutes relating to appeals by Chapter 399 of the Acts of 1957, Md.Code (1957), Art. 5, § 2 provided:

"Any party may appeal to the Court of Appeals from a decision, determination or ruling of a court of law to which issues have been sent from an equity court or an orphans' court to be tried."

The predecessor to former Art. 5, § 2 was a statute originally enacted by Chapter 208 of the Acts of 1832. As amended, the 1832 enactment was Md.Code (1951), Art. 5, § 5. It provided:

"In cases of issues sent from the orphans' court or a court of equity to a court of law to be tried, exceptions may be taken to any opinion given by the court before whom such issues shall be tried, and an appeal may be taken on such exceptions; and such appeal, while pending, shall stay all proceedings in the orphans' court touching the matter of such issues."

A long line of decisions of this Court recognizes that the appeal from the determination of issues transmitted by an orphans' court to a circuit court is from the determination of the issues by the circuit court, and not from the judgment thereafter entered by the orphans' court. See *Grant v. Curtin,* 194 Md. 363, 368–69, 71 A.2d 304, 306 (1950); *Schmeizl v. Schmeizl,* 184 Md. 584, 597–98, 42 A.2d 106, 112 (1945); *Syfer v. Dolby,* 182 Md. 139, 152, 32 A.2d 529, 535 (1943); *Kamps v.*

*Alexander,* 133 Md. 198, 200–01, 104 A. 427, 428 (1918); *Bradley v. Bradley,* 123 Md. 506, 509, 91 A. 685, 686–87 (1914); *Hoppe v. Byers,* 60 Md. 381, 395 (1883); *Browne v. Browne,* 22 Md. 103, 116 (1864). *Wall v. Heller,* 61 Md.App. 314, 323–25, 486 A.2d 764, 768–69, *cert. denied,* 303 Md. 297, 493 A.2d 350 (1985), expressly holds that the appeal in issues cases is today under CJ § 12–301.

*Meyer v. Henderson,* 88 Md. 585, 41 A. 1073, is in accord with the foregoing analysis. *Meyer* was a caveat case in which the will, defended in circuit court by the personal representative, was found to lack formal execution. When that issue finding was returned to the orphans' court, it revoked probate of the will. A legatee, who had not participated in the circuit court proceedings, unsuccessfully challenged revocation and appealed from the orphans' court revocation order to the Court of Appeals. The legatee's point was that there should not have been any determination in the court of law of issues raised by the caveat until the issue of the caveator's standing had been decided. In the initial opinion in *Meyer,* this Court agreed with the legatee's argument.[8]

The right of a legatee to appeal had been conferred by the Acts of 1818, Ch. 204, § 1. As codified at the time of the *Meyer* decision in Md.Code (1888), Art. 5, § 58, that statute read in relevant part: "From all ... judgments made by the orphans' court, the party who may deem himself aggrieved by such ... judgment, may appeal to the court of appeals." *Meyer* drew on *Stevenson v. Schriver,* 9 G. & J. 324 (1837), for the following construction of the 1818 enactment:

" 'The term party, in this section of the Act, is not used in a technical sense, necessarily importing a litigant before the Court in the proceedings in which the decree or order passed at the time of or antecedently to its passage; but may also mean one in whose interest the decree or order has a direct tendency to operate injuriously and who after

---

8. On a motion for reargument, it developed that the standing issue had, in fact, been preliminarily decided.

its passage may appear in Court and claim the privilege of appeal.' "

*Meyer,* 88 Md. at 590–91, 41 A. at 1075 (quoting *Stevenson,* 9 G. & J. at 335). In the *Stevenson* opinion, the sentence immediately following the above quotation reads:

"Many, if not most of the orders of the Orphans' Court, are wholly *ex parte,* and yet the right to appeal has never been denied to him who has sustained an injury thereby."

9 G. & J. at 335. This sentence explains the reason for the liberal rule as to parties that applies to the appeal of orders of orphans' courts.

The question, nevertheless, remains: "Was George a party opponent to Joyce in the trial of the caveat issues?" The discussion, *supra,* in addition to explaining why we are not persuaded by the reason given by the Court of Special Appeals for its "yes" answer, outlines our reasons for answering "no." In relation to the general administration of a decedent's estate, a caveat case is a plenary proceeding. ET § 2–105. Particularly where, as here, the issues of fact generated by the petition for caveat are transferred to a court of law, the proceedings bear major similarities to an independent unit of litigation. Conflicting resolutions of disputed facts are respectively advocated by the participants. Such caveat proceedings become actions in the circuit court, generally subject to Title 2 of the Maryland Rules of Procedure. Rule 1–101. When such a caveat proceeding comes on for trial, the proof is subject to Title 5 of the Maryland Rules of Evidence. *Id.* Applying here the analogy to civil trials, we would ordinarily decide applicability of the hearsay exception under consideration by identifying Joyce's adversary in the litigation. Here the only adversary was Raymond, as personal representative of Holliday's estate.

We do not believe that Raymond's role as personal representative of Holliday's estate makes George, as a legatee, in some way constructively a party opponent to Joyce. The role in a caveat case of the personal representative depends upon when the caveat is filed. If a caveat is filed before probate, the caveat acts as a stay pending determination of the issues;

however, the court can appoint an administrator *ad litem.* *Kent v. Mercantile–Safe Deposit & Trust Co.,* 225 Md. 590, 594, 171 A.2d 723, 725 (1961). If a caveat is filed after the will has been probated, the personal representative then has the duty to defend the will. *Id.*

Indeed, where the will had been admitted to probate, it is not only the executor's duty to defend the interests of the estate, but it is procedurally improper for the caveator to designate the legatees as parties to the caveat proceedings. *Little Sisters of the Poor v. Cushing,* 62 Md. 416, 418–19 (1884). "The defense of all the interests of the estate is confided by law to the executor. He is the proper representative of the legatees in all legal controversies. Before the probate of the will the position of legatees is essentially different." *Id.* An orphans' court, however, has discretion to allow legatees to be made parties where participation as a party would be important to their interests. Examples include where the executor is incompetent or lacks the intelligence to defend the interests of the legatees. *Id.* at 419. But the caveator cannot file a post-probate caveat petition against the legatees and require them to incur the expense of defending the will. *Id.*

A. Gibber, *Gibber on Estate Administration* § 2.59 (3d ed. 1991) (Gibber) discusses rulings by the Orphans' Court for Baltimore City in *In re Estate of Cole,* Estate No. A–23367 (reported in Baltimore Daily Record May 5, 1985). In that case the Orphans' Court for Baltimore City concluded:

"1. The personal representative is the proper representative of both the legatees and the estate.

"2. After probate, a caveator cannot make a legatee a party defendant.

"3. A legatee under a contested will cannot be made a party for purposes of filing interrogatories.

"4. A legatee may petition the court to be made a party defendant."

Gibber at 2–70.

*Browne v. Browne,* 22 Md. 103, reflects an order by an orphans' court, framing caveat issues, in which that court

designated the named caveator to be plaintiff and designated certain named persons to be defendants in the plenary proceeding. There is no order in the instant matter similarly designating George as a defendant.

The decision of the caveat issue is binding and conclusive upon all interested persons whether they were parties to the caveat proceeding or not. *McDaniel v. McDaniel,* 86 Md. 623, 626, 39 A. 423, 424 (1898). An orphans' court has the power, however, to set aside the probate of a will after a caveat proceeding and verdict in favor of the will upon proof of fraud or collusion. *McCambridge v. Walraven,* 88 Md. 378, 41 A. 928 (1898); *Worthington v. Gittings,* 56 Md. 542 (1881).

*Pleasants v. McKenney,* 109 Md. 277, 291, 71 A. 955, 957 (1909), explained that a caveat case is an *in rem* proceeding in which all interested persons may appear and be heard. The judgment *in rem* ordinarily establishes conclusively the validity or invalidity of the will, *id.* at 291–92, 71 A. at 957, and that determination is binding on all persons interested in the will, whether they are actual parties or not, as to all issues submitted to the jury. *Id.* at 292, 71 A. at 958. Inasmuch as the caveat in *Pleasants* was filed before probate of the will, the executor named in the will was not a necessary party. If he desired to defend the will, he would have to have done so at his own expense. When the caveat is pre-probate, the litigation is between "the next of kin and the parties claiming under the alleged wills." *Id.* at 293, 71 A. at 958. It is noteworthy that the orphans' court in the *Pleasants* case, when framing the issues for transmittal, had designated by name as defendants in the caveat trial those legatees under the challenged will who were not themselves caveators. *Id.* at 288, 71 A. at 956.

Although George could have obtained an order from the orphans' court designating him as a party defendant in the trial of the transmitted issues, or, although George likely could have achieved party status by answering the petition to caveat and thereafter participating as a defendant in the caveat proceedings, he did neither. We hold that, under these cir-

cumstances, George was not a party opponent to the caveator, Joyce. Accordingly, the circuit court did not err in excluding the Cunningham testimony.

In light of this holding, it is unnecessary to decide whether, if George had been a party, his statement would have been inadmissible for any and all substantive purposes, because of its prejudicial effect on Raymond, a non-joint co-legatee, or whether the statement would have been admissible solely against George. As to the former, see *Belfield v. Coop*, 8 Ill.2d 293, 134 N.E.2d 249 (1956); Annotation, *Admissibility of Declaration by Beneficiary Named in Will in Support of Claim of Undue Influence or Lack of Testamentary Capacity*, 167 A.L.R. 13, 37–47 (1947). As to the latter, see Wigmore § 1081, at 205–06.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT FOR THE ENTRY OF A JUDGMENT AFFIRMING THE JUDGMENT OF THE CIRCUIT COURT FOR HARFORD COUNTY. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE RESPONDENT, JOYCE MERLING.*