875 A.2d 771

**Diana KNIGHT**

v.

**PRINCESS BUILDERS, INC., et al.**

**No. 0965, Sept. Term, 2004.**

Court of Special Appeals of Maryland.

June 6, 2005.

Brian G. West (Koehler & West, Chtd. on the brief), Towson, for appellant.

Jonathan M. Wall, (Hyatt, Peters & Weber, LLP), Annapolis, David R. Forrer of Baltimore, for appellee.

Argued before HOLLANDER, DEBORAH S. EYLER, ADKINS, JJ.

ADKINS, Judge.

In this dispute over the right to purchase estate property, we shall hold that a contract purchaser whose agreement required approval by the orphans' court qualifies as a "party" with the right to appeal to the circuit court from the orphans' court's decision not to approve that contract. This appeal is authorized by Md.Code (1974, 2002 Rep. Vol.), section 12–502 of the Courts and Judicial Proceedings Article (CJP).

## FACTS AND LEGAL PROCEEDINGS

In 2002, Mary Martha Isabella Knight died intestate, leaving 12 heirs with claims to, *inter alia,* Lots 20 and 21 at 1614 Severn Road in Severn. The successor personal representative offered the property for sale through a realtor and eventually entered into contracts to sell both lots to appellee Princess Builders, Inc., for a total of $145,000.

Appellant Diana Knight, an heir to the estate, objected to the sale in the Orphans' Court for Anne Arundel County. The orphans' court ordered that the property be sold to Diana [1] for $146,000 unless, within ten days, the estate received an offer to purchase the property at a higher price.

Princess Builders appealed that order to the Circuit Court for Anne Arundel County. After an evidentiary de novo hearing, the circuit court ordered that the property be sold to Princess Builders under the terms of their contracts. Diana noted this timely appeal, raising two issues for our review, which we rephrase as follows:

I. Did the circuit court lack subject matter jurisdiction to entertain Princess Builders' appeal from the orphans' court decision?

II. Is Princess Builders' contract of sale still enforceable, or did it expire on its own terms before the hearing in circuit court?

---

1. To prevent confusion with the decedent and her estate, we shall refer to appellant as Diana.

## DISCUSSION

### I.

### Subject Matter Jurisdiction

#### A.

#### Appeal Of Orphans' Court Decision

Appeals may be taken from a decision of the Orphans' Court for Anne Arundel County to either the Circuit Court for Anne Arundel County or to this Court. CJP section 12–501 provides that "[a] party may appeal to the Court of Special Appeals from a final judgment of an orphans' court." Alternatively, CJP section 12–502 permits a de novo appeal to the circuit court, with the subsequent right to appeal the circuit court decision to this Court, pursuant to CJP section 12–301.[2] *See Brees v. Cramer,* 322 Md. 214, 219 n. 2, 586 A.2d 1284 (1991). Section 12–502 extends the right of de novo appeal to any "party":

> (a) *In general* ... (1)(i) Instead of a direct appeal to the Court of Special Appeals pursuant to § 12–501 of this subtitle, **a party may appeal to the circuit court** for the county from a final judgment of the orphans' court.
>
> (ii) The appeal shall be heard de novo by the circuit court.
>
> (iii) The de novo appeal shall be treated as if it were a new proceeding and as if there had never been a prior hearing or judgment by the orphans' court.
>
> (iv) The circuit court shall give judgment according to the equity of the matter.[3] (Emphasis added.)

---

**2.** The right to appeal to the circuit court is not available in Harford or Montgomery Counties. *See* Md.Code (1974, 2002 Repl.Vol.), § 12–502 of the Courts and Judicial Proceedings Article (CJP); Md. Rule 6–463.

**3.** Md. Rule 6–463 reiterates this option:

An appeal from a judgment of the [orphans'] court may be taken (a) to the Court of Special Appeals of Maryland pursuant to ... § 12–501, or (b) except in Harford and Montgomery Counties, to the circuit court for the county pursuant to ... § 12–502.

Diana argues that "the lower court ... had no jurisdiction to hear the 'appeal' taken by Princess Builders[.]" Her challenge to the circuit court's subject matter jurisdiction rests on two related premises.

First, Diana understands section 12–502 to extend the right to appeal an orphans' court decision only to those who participated in the orphans' court proceedings as parties. Her construction of the statute relies on *Milburn v. Milburn,* 142 Md.App. 518, 533–34, 790 A.2d 744 (2002), in which we recognized that the term "party" is not defined in the Maryland Rules, but has been judicially construed to be limited to "persons who are entered on the record as plaintiff or defendant" and to exclude "other persons who may be affected by the outcome of the cause of action, either indirectly or consequently."

Second, Diana contends that there was no timely appeal by the successor personal representative, which would otherwise have given the circuit court jurisdiction to consider the substance of Princess Builder's arguments regarding the contract since the personal representative has consistently favored enforcement of the contract on the same grounds advocated by Princess Builders. According to Diana, the personal representative had the right to appeal the orphans' court order, but did not do so within the permitted 30 days.[4] Therefore, she contends, the circuit court did not have subject matter jurisdiction to entertain the appeal.

Princess Builders counters that it has standing to appeal the orphans' court decision rejecting its executed contract to purchase the estate property, even though it was not a party to the orphans' court proceedings. *Milburn,* the company points out, is inapposite because, instead of construing the

---

4. At the de novo circuit court hearing on Princess Builder's appeal, the personal representative noted an appeal on behalf of the estate. CJP section 12–502(b) provides that "[a]n appeal pursuant to this section shall be taken by filing an order for appeal with the register of wills within 30 days after the date of the final judgment from which the appeal is taken."

meaning of the term "party" in CJP section 12–502, we interpreted Md. Rule 2–506 governing dismissal of civil actions. Princess Builders argues that Diana's narrow construction of section 12–502 contradicts "a long line of Maryland cases" concerning appeals from an orphans' court. These cases, the company says, generally hold that "[t]he term 'party' is not used in a technical sense but means anyone whose interest the Order has a direct tendency to affect adversely." *Davis v. Gerhard*, 35 Md.App. 243, 244 n. 1, 370 A.2d 1140 (1977).

As a threshold matter, we recognize that, although there is precedent holding that one need not be a party to the orphans' court proceedings in order to appeal to this Court under CJP section 12–501, there is no analogous authority with respect to an appeal to the circuit court under CJP section 12–502. Nor is there a Maryland case specifically permitting an appeal by a contract purchaser aggrieved by an orphans' court decision. We shall hold, for the reasons set forth below, that CJP section 12–502 authorized Princess Builders' appeal to the circuit court.

### B.

### Statutory Construction

When we construe the statutory right to appeal to the circuit court from an orphans' court decision,

> [o]ur analysis begins with an examination and interpretation of ... Section 12–502 ... and related Maryland Rule 6–463 concerning appeals to the Circuit Court from judgments rendered in the Orphans' Court. The principal goal of statutory interpretation is to ascertain the legislative intent behind the enactment. The statutory language serves as the primary source for determining legislative intent.

*Beyer v. Morgan State Univ.*, 369 Md. 335, 349, 800 A.2d 707 (2002).

Nonetheless, "statutory language is not read in isolation, but 'in light of the full context in which [it] appear[s],

and in light of external manifestations of intent or general purpose available through other evidence.' " *Stanford v. Md. Police Training & Corr. Comm'n*, 346 Md. 374, 380, 697 A.2d 424 (1997) (citations omitted). For that reason,

> [w]hen we pursue the context of statutory language, we are not limited to the words of the statute as they are printed.... We may and often must consider other "external manifestations" or "persuasive evidence," including ... its relationship to earlier and subsequent legislation, and other material that fairly bears on the fundamental issue of legislative purpose or goal, which becomes the context within which we read the particular language before us in a given case.

*State v. Bell*, 351 Md. 709, 717, 720 A.2d 311 (1998).

The Court of Appeals, affirming this Court's decision, agreed that CJP section 12–502, authorizing de novo appeal to the circuit court, must be read "in conjunction with" CJP section 12–501, authorizing direct appeals to this Court. *See Lowenthal v. Rome*, 45 Md.App. 495, 502, 413 A.2d 1360 (1980), *aff'd*, 290 Md. 33, 34, 428 A.2d 75 (1981). We have held that case law interpreting predecessor statutes remains valid precedent for construing the right to appeal an orphans' court decision.

> [Section] 12–501 expressly gives a party the right to appeal to the Court of Special Appeals from a final judgment of an orphans' court. The section combined former §§ 9 and 10 of Art. 5, giving effect to recent legislation regarding appellate jurisdiction, but otherwise, according to the Revisor, making only changes in style. The progenitors of § 12–501, however, appeared to speak in absolutes. Art. 5, § 64 as it appeared in the Codes of 1924, 1939 and 1951, and as § 60 in the Code of 1904, read:
>
>> 'From all decrees, orders, decisions and judgments, made by the orphans' court, the party, who may deem himself aggrieved by such decree, order, decision or judgment, may appeal to the court of appeals.'

Chapter 399(4), Acts 1957, amended the section, and as codified as Art. 5, § 9 it read:

'Any party may appeal to the Court of Appeals from any decree, order, decision or judgment of an orphans' court.'

The amendment, in effect, merely omitted the language about an aggrieved party, presumably, in the view of the Court of Appeals, as surplusage.

*Wright v. Nugent,* 23 Md.App. 337, 356–57, 328 A.2d 362 (1974), *aff'd,* 275 Md. 290, 338 A.2d 898 (1975).

## C.

### A Contract Purchaser May Be A "Party" Within The Meaning Of CJP Section 12–502

The Court of Appeals has long permitted persons not named as parties in a matter before an orphans' court to appeal an adverse decision, under the predecessors to current CJP sections 12–501 and 12–502. In *Dorsey v. Warfield,* 7 Md. 65, 66 (1854), the Court of Appeals construed an 18th century statute permitting appeal of an orphan's court decision by "the party who shall deem himself aggrieved[.]" In that case, a legatee challenged the orphans' court decision to revoke and annul the probated will creating her interest. The Court observed that "there can be no doubt of this case being properly before us, inasmuch as there is not, nor can there be, any question as to the right to appeal of Rebecca Dorsey, who is directly interested in the decision of the orphans court." *Id.* at 75.

In *Cecil v. Harrington,* 18 Md. 510, 512 (1862), the Court explicitly recognized that the right to appeal from an orphans' court decision does not require party status.

The appellant in this case was not a party to the original proceedings in the orphans court, but being interested as heir and distributee, he might be said to be aggrieved by the decision, which was adverse to his interest. Under the rulings of this court he was entitled to an appeal, although not technically a party.

Similarly, in *Meyer v. Henderson*, 88 Md. 585, 41 A. 1073 (1898), in which a legatee appeared as a non-party in orphans' court proceedings in order to oppose a caveat, the Court of Appeals broadly construed the term "party" to allow the appeal.

It is also said that appellant is not a party to the proceedings, and cannot appeal from the order of the court below. **While the appellant was not a party of record, yet she is the one most interested in sustaining the validity of the will, and is consequently the party aggrieved by the order of the Orphans' Court** improperly revoking the probate.

By Code, Art. 5, sec. 58, it is provided that from all decrees, orders, decisions and judgments made by the orphans' court, **the party who may deem himself aggrieved by such decree, order, decision or judgment may appeal** to the Court of Appeals. In *Stevenson v. Schriver*, 9 Gill and J. 335, it was said: **"The term 'party,' in this section of the Act, is not used in a technical sense necessarily importing a litigant before the Court in the proceedings in which the decree or order passed at the time of or antecedently to its passage; but may also mean one in whose interest the decree or order has a direct tendency to operate injuriously and who, after its passage may appear in Court and claim the privilege of appeal."**
*Id.* at 590–91, 41 A. 1073 (emphasis added).

This statutory right of a non-party to appeal from the decision of an orphans' court has not been restricted to those who are entitled to receive a portion of the estate under law or the terms of the testator's will. For example, appeal rights have been extended to sureties and attorneys.

In *Gunter v. State ex rel. Bouldin*, 31 Md. 21 (1869), the bankrupt guardian of a minor admitted that he used for his own benefit all of the $2,000 he had been entrusted to hold until the ward's 21st birthday. When the orphans' court ordered the successor guardian to file suit against the sureties on the original guardian's bond, the sureties noted an appeal

under the predecessor to section 12–501. The Court of Appeals agreed with the sureties that "[t]he appellants, as sureties, have such an interest in the subjects of said orders as authorizes them to maintain this appeal." *Id.* at 27. Because "they had the right and were interested in preventing the passage of any order directing the bond on which they were sureties to be put in suit[,]" the Court of Appeals denied a motion to dismiss the appeal. *Id.* at 33.

In *Davis v. Gerhard,* 35 Md.App. 243, 244, 370 A.2d 1140 (1977), this Court allowed an appeal under section 12–501 by the estate's attorney, who challenged an orphans' court decision to reduce his fee by 50 percent and to assess him for failing to put the estate's real estate proceeds into an interest-bearing account. Citing section 12–501 and *Meyer,* we considered the appeal, noting that "[t]he term 'party' is not used in a technical sense but means anyone whose interest the Order has a direct tendency to affect adversely." *Id.* at 244 n. 1, 370 A.2d 1140.

CJP section 12–502 offers an alternative to appeals on the record to this Court under section 12–501, but is "[c]learly . . . to be considered in conjunction with" section 12–501. *See Kaouris v. Kaouris,* 324 Md. 687, 714, 598 A.2d 1193 (1991); *Lowenthal,* 45 Md.App. at 502, 413 A.2d 1360. We assume that the General Assembly is aware of the broad interpretation that the Court of Appeals and this Court have given to the term "party" in section 12–501. *See, e.g., White v. Workers' Compensation Comm'n,* 161 Md.App. 483, 491, 870 A.2d 1241 (2005)("The General Assembly is presumed to be aware of the Court of Appeals' interpretation of its enactments").

For decades, these two statutes and their predecessors have been construed as creating alternative methods to appeal an orphans' court decision. *See, e.g., Soothcage's Estate v. King,* 227 Md. 142, 146–47, 176 A.2d 221 (1961)(describing appeal under predecessor statute at Md.Code (1957), Art. 5, section 25). Never has there been any suggestion—legislative or judicial—that the term "party" in section 12–502 has a substantially narrower meaning than the construction given by

the Court of Appeals to that same word in section 12–501 and its predecessors.

■ As a general rule, when words that may be susceptible of more than one meaning are repeated within the same statutory scheme, we presume that the word "is used in the same sense." *Whack v. State,* 338 Md. 665, 673, 659 A.2d 1347 (1995); *see State v. Knowles,* 90 Md. 646, 654, 45 A. 877 (1900). We conclude that, by selecting and maintaining the term "party" in both CJP sections 12–501 and 12–502, the General Assembly has indicated that the terms must be construed identically. *See, e.g., Whack,* 338 Md. at 673, 659 A.2d 1347 ("Since it has not legislatively overturned the interpretation articulated in [prior case law], we can only conclude that the General Assembly has acquiesced in that interpretation"); *Williams v. State,* 292 Md. 201, 210, 438 A.2d 1301 (1981)(presumption that General Assembly agrees with Court of Appeals' construction of statutory language "is particularly strong whenever, after statutory language has been interpreted by this Court, the Legislature re-enacts the statute without changing in substance the language at issue"). We hold, therefore, that one need not participate as a party in the orphans' court proceedings to take an appeal under CJP section 12–502.

■ Consequently, we address next whether contract purchasers such as Princess Builders have the right to appeal an adverse orphans' court decision under sections 12–502 and 12–501. Like the legatee in *Meyer,* Princess Builders participated as a non-party in the orphans' court proceedings in order to protect its interest in estate property. Nevertheless, we recognize that the equitable interests created by a contract to purchase estate property might be distinguished from the interests of legatees, devisees, heirs, and even estate attorneys. A contract purchaser's claim of entitlement to estate property arises from an agreement negotiated by the personal representative, whereas claims by legatees, heirs, and estate attorneys arise directly from the testator's will and probate laws.

In our view, a contract purchaser such as Princess Builders is more like the sureties in *Gunther*, who challenged the orphans' court order to file suit against them. In both instances, the appellant is a party to a contract entered into by a fiduciary on behalf of the estate.

We do not rest our decision on such factual distinctions and similarities, however. The same "aggrieved party" principles that led the Court of Appeals to conclude that the sureties had the right to appeal under the predecessor to CJP section 12–501 also lead us to conclude that the contract purchaser here had the right to appeal under CJP section 12–502. Ultimately, a contract purchaser whose right to purchase the estate property has been adversely affected by an orphans' court order is aggrieved and therefore has standing to appeal under section 12–502.

Because we agree with Princess Builders that it was the proper party to note an appeal from the orphans' court judgment, we hold that the circuit court had subject matter jurisdiction to entertain Princess Builder's appeal under CJP section 12–502. Accordingly, we need not reach Diana's secondary argument that the appeal filed by the personal representative was too late to confer jurisdiction.[5]

---

**5.** We note, however, that the successor personal representative did not have standing to appeal the orphans' court judgment because,

> once a court determination is made, a personal representative is bound to make distribution in accordance with the order, and is fully protected by it. . . . [A]n unrestricted right of appeal would subject the court to a myriad of collateral and incidental matters, and "would open the door to appeals presenting issues which might well be moot, or seeking opinions on abstract propositions." . . . [W]e also recognize that an unlimited right of appeal, in the hands of the executor or representative, could seriously deplete a small estate and might delay indefinitely the distribution of the estate assets to deserving heirs."

*Alston v. Gray*, 303 Md. 163, 167, 492 A.2d 900 (1985) (citations omitted). *See also Frater v. Paris*, 156 Md.App. 716, 720–22, 848 A.2d 673 (2004)(personal representatives lacked standing to appeal orphans' court order to value wife's statutory share of testator's estate on date of distribution rather than on date of testator's death, because neither they nor the estate were "aggrieved" by that order).

## II.

### Contract Enforceability

As alternative grounds for reversing the circuit court's order, Diana argues that there was no enforceable agreement between the estate and Princess Builders after August 31, 2003, because Princess Builders failed to remove the following contingency in the contract:

> This Contract is contingent on buyer obtaining a building permit for house of buyers choice [b]y August 31, 2003 or this contract is declared null and void and of no further effect with deposit being declared null and void and re-funded as well. Thus, any Backup Contract could then become primary. Time being of the essence for Settlement date of Sept 9, 2003.

According to Diana, this provision "created a self-operating terminating clause" that automatically terminated the contract as of September 1, 2003. "Thus, there was no active contract ... as of December 16, 2003 (when the Orphans' Court held its hearing)," or thereafter when the circuit court considered the matter. We disagree.

This case is easily distinguished from the cases cited by Diana for the proposition that the contingency operated as a self-executing mechanism that cancelled the contract. Here, the contingency was patently for the sole benefit of Princess Builders, because neither the estate nor the personal representative had an interest in whether the company would be able to build a home on the property. The record shows that this contingency was waived by Princess Builders. Princess Builders elected to purchase the property even if it could not obtain the permit, and since the estate benefitted from the sale without regard to whether anything was ever built on the property, the personal representative had no reason to object to this waiver.

In the cases cited by Diana, the condition in question was for the benefit of the party who sought to avoid the contract on the basis of that condition. *See, e.g., Jones v. Saah*, 261

Md. 340, 343–44, 275 A.2d 165 (1971)(sellers successfully defended specific enforcement action on ground that buyers failed to secure commercial rezoning by a certain date, which was a condition precedent and material to sellers because they agreed to take back deed of trust in order to finance purchase of property); *Metz v. Heflin*, 235 Md. 550, 552–53, 201 A.2d 802 (1964)(sellers successfully defended against buyer's suit for specific performance on ground that purchaser failed to satisfy requirement that he obtain rezoning of property by certain date, where rezoning increased value of property serving as security for first deed of trust that sellers agreed to take back on property); *Shea v. Marton*, 214 Md. 539, 544, 136 A.2d 247 (1957)(buyers successfully defended sellers' suit for specific performance on ground that sellers failed to obtain rezoning within specified time period). That is not the case here. The contingency in this contract was not made for Diana's benefit, and she cannot use it to nullify the agreement.

We find no error in the circuit court's decision to enforce the contract according to its terms.

**JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANT.**