## MORTIMER DORSEY and REBECCA H. DORSEY vs. ELEANOR WARFIELD and others.

The mere opinions of witnesses not professional experts, as to the mental capacity of a party to make a will, without assigning *the facts* from which their opinions were deduced, are wholly inadmissible.

A party named as executor in a will, who never assumed to act as such but renounced the executorship, and who takes no interest under the will, is a competent witness to sustain the will when assailed by a *caveat*.

A devisee of real estate under a will, is directly interested in the decision of the orphans court upon a *caveat* to the will, and has the right to appeal from an order revoking probate thereof.

APPEAL from the Orphans Court of Howard County.

This appeal was taken from an order of the court below, revoking and annulling the probat of the will of Fielder Warfield, and annulling letters of administration *cum testamento annexo*, which had been previously granted upon his personal estate. The facts of the case are all sufficiently stated in the opinion of this court. By an agreement of counsel the record was amended, so as to show that the appeal was taken by Rebecca H. Dorsey, one of the legatees under the will, as well as by Mortimer Dorsey, the executor named in the will, but who had renounced the executorship, and that this record shall be used as the record in the appeal of said Rebecca.

The cause was argued before LE GRAND, C. J., ECCLESTON and TUCK, J.

*John T. B. Dorsey* and *William H. G. Dorsey* for the appellants, argued:

1st. That the caveators, the appellees, are now precluded from making objection to the capacity of the testator, because they had full notice of the offer to prove the will by Mortimer Dorsey the custodiary thereof. 1 *Jarman on Wills,* 217. 1 *Wms. on Ex'crs,* 211, 212.

2nd. That the *onus* is on the caveators to prove incapacity of the testator. 1 *Jarman on Wills,* 72. 3 *Md. Rep.,* 491,

*Cramer vs. Crumbaugh.* 10 *New Hamp.*, 514, *Pettes vs. Bingham.* The mere opinions of witnesses of the incapacity of the testator, without a statement of facts to sustain them, are clearly inadmissible. 7 *Gill*, 10, *Brooke vs. Townshend.* The witnesses for the caveators, with but few exceptions, fail to state any facts upon which an opinion can be based : they merely state opinions uncorroborated by facts. Whilst on the part of the caveatees, the proof of capacity is established by the family physician who had known the testator from his youth, and who says he was perfectly competent to transact any ordinary business, and had sufficient mind, memory and understanding, to make a valid deed or contract. This testimony is corroborated by the subscribing witnesses to the will, and a large number of witnesses who had known the testator for a long time, and had ample opportunity to form a correct judgment as to the state of his mind. And there is nothing in the contents of the will or proof in relation to property, to ground any suspicion of incapacity.

3rd. That Mortimer Dorsey, the party named as executor in the will, but who had renounced the executorship, is a competent witness to prove the will. 1 *Mod.*, 107, *Fountain vs. Coke.* 1 *Wm. Bl.*, 365, *Lowe vs. Jolliffe.* 12 *East.*, 250, *Bettison vs. Bromley.* 6 *Taunt.*, 220, *Phipps vs. Pitcher.* 1 *Peere Wms.*, 290, *Goss vs. Tracy.* 1 *Doug.*, 139, *Goodtitle vs. Welford.*

4th. That the *factum* of the will being admitted, knowledge of its contents was not necessary to be shown first. 1 *Jarman on Wills*, 44 to 47. 1 *Wms. on Ex'crs*, 220, 221.

5th. That Rebecca H. Dorsey, was a proper party to the *caveat*, under the act of 1831, ch. 315.

*M. B. Luckett* and *Joseph M. Palmer* for the appellees.

It is said the *caveat* was not filed in time, and that the caveators are precluded from making objections to the mental capacity of Fielder Warfield, to make a valid deed or contract, because they had notice of the offer to prove the will. This question is not in any way governed by the English

law, but is regulated by the act of 1798, ch. 101, sub-ch. 2, sec. 13, which is conclusive upon the subject. The letters with the will annexed granted to Kitty Warfield, were granted *without a contest,* and this section of the act provides an indisputable right to file the *caveat* at *any time*; there is no limitation as to time. But independent of this act the length of time elapsed after probate granted, does not in the Ecclesiastical courts in England, prevent a review and revoking of a probate. In *Satterthwaite vs. Satterthwaite,* 3 *Phill.,* 1, in 1 *Eng. Eccl. Rep.,* 351, the probate of a testamentary paper was reviewed after the lapse of nine years and the paper rejected. So in *Finacune vs. Gayfere,* 1 *Eng. Eccl. Rep.,* 425, probate granted in 1807 was reviewed and revoked in 1820, and the court said that time alone was no absolute bar to the application. This construction of the act of 1798, has been repeatedly sanctioned by the Court of Appeals. See *Glass et al., vs. Ramsay,* 9 *Gill,* 456, and *Ramsay vs. Glass, Ibid.,* 56. This 13th section is as broad as language can make it, leaving no room for different constructions. One fact, however, is worthy of observation on this branch of the case: Mortimer Dorsey, the only party attempting to sustain this will, and having no interest in the matter, except for his *daughter,* whom he made devisee, in his answer does not take any exception to time, and no such question was made before the orphans court.

As to the objection that the *onus* of proving incapacity is on the caveators, we take the converse of the proposition and say, that the *onus* of proving capacity is on the caveatees. The 3rd section of the act of 1798, ch. 101, sub-ch. 1, provides that no will shall be good and effectual for any purpose, unless the person making it be, at the time of executing or acknowledging it, of sound and disposing mind and capable of executing a valid deed or contract. This furnishes the rule by which the capacity of the testator is to be measured. The inquiry before a will can be admitted to probate must be, was the testator at the time of executing it, capable of executing a valid deed or contract? If the testator be an igno-

Dorsey *vs.* Warfield.

rant old man, unable to read or write, whose mind is in such a weak and imbecile condition that his friends and family will not trust him to transact ordinary business, he does not come up to the standard of mental capacity fixed by the legislature. Such a man is not capable of disposing of his property understandingly and with discretion, and no inferior grade of intellect will suffice. There must be a sound and disposing mind, capable of making a valid deed or contract. The mind of the testator, when he makes his will, must be equal to the work in which he is engaged. 4 *Wash. C. C. Rep.*, 580, *Harrison vs. Rowan.*

The mental capacity of the testator is to be determined by the condition of his mind *at the time* of his executing or acknowledging the will, and the subscribing witnesses are placed around him for the purpose of attesting the mental capacity at the time: See *Powell on Devises*, 81, whose views are fully sustained by the Court of Appeals, in *Davis vs. Calvert*, 5 *G. & J.*, 299 to 301. The subscribing witnesses are to testify, not only to the execution of the will, but as to the state of mind of the testator at the time. The presumption, therefore, that a person making a will was at the time of a sound and disposing mind, is not the same as in the case of making other instruments: but the sanity and mental capacity must be proved affirmatively by the caveatees: the *onus* is on them to prove mental capacity. 22 *Maine*, 438, *Gerrish vs. Nason.* 7 *Pick.*, 94, *Brooks et al., vs. Barrett et al.* 5 *Johns. Ch. Rep.*, 148, *Van Alst vs. Hunter.* 2 *Atk.*, 56, *Wallis vs. Hodgeson.* 4 *Eng. Eccl. Rep.*, 33, *Marsh vs. Tyrrell.* What constitutes mental capacity sufficient to make a valid will, is well defined in England. In *Combe's Case, Moore*, 759, the rule is laid down, "that sane memory for the making of a will, is not at all times when the party can answer to any thing with sense, but he ought to have *judgment* to discern and be of *perfect memory*, otherwise the will is void. So in the *Marquis of Winchester's Case*, 6 *Coke's Rep.*, 23: "It is not sufficient that the testator be of memory when he makes his will, to answer familiar

and usual questions, but he ought to have a disposing memory, so as to be able to make a disposition of his estate with *understanding and reason.*" This is the true test of mental capacity to make a valid will, at the present day, both in England and in this State, and it ought not to be departed from.

In this case, the subscribing witnesses have not come up to the requirements of the law, in proving Fielder Warfield at the time of executing the paper in question, of a sound and disposing mind and memory, capable of making a valid deed or contract, and disposing of his estate with *understanding and reason.* They all say that he could not read or write; that the will was written by Mortimer Dorsey, (whose daughter, Rebecca H. Dorsey, was one of the principal devisees in it,) who was present when it was executed, and took an active part in the matter. Two of them do not pretend to say that he was of sound and disposing mind, and capable of making a valid deed or contract, whilst the other says vaguely, that he "thought he had sense enough to say who he wished to have his property." If the attesting witnesses do not sustain the will, it would be useless to call others to prove that the testator was not of a sound and disposing mind. But eleven witnesses were examined, who proved that he was an ignorant old man, who could neither read nor write, and had been considered by his mother, brother and sisters, from his youth to the day of his death, as incapable of transacting any business of importance, and was always treated by his family as imbecile and weak minded; that his sister, Kitty Warfield, managed and transacted the business of the family after the death of her brother Tilghman, and that Fielder was not trusted to make contracts. The will was written and prepared by Mortimer Dorsey, who made himself executor and his daughter a devisee, giving to her a large portion of the estate to the exclusion of his own sisters, without any sound reason anywhere assigned for such an unnatural act. The will was not read or explained to him in the presence of the subscribing witnesses, and there is no evi-

dence that he had the least knowledge of its contents, except what Mortimer Dorsey says, who it is submitted is not a competent witness in this case.

From a careful examination of all the evidence, it is manifest, that some fraud and undue influence was practiced in procuring the execution of this paper. The will upon its face is evidence of some improper and undue influence having been exercised upon his mind, by the writer of the will, who provided well for his daughter, a stranger to the testator, to the exclusion of his own sisters, or by some one else. It is an admitted principle, that if the writer of a will, for a weak, ignorant man, who cannot read, takes a benefit under the will, it is a circumstance which will excite the suspicion of the court, and lead to a careful examination of all the circumstances surrounding the transaction. 2 *Green's. Ch. Rep.*, 549, *Day vs. Day.* 6 *Eng. Eccl. Rep.*, 350, *Sankey vs. Lilley.* 1 *Curteis*, 637, *Barry vs. Butlin.* In the case last cited, Baron Parke, after establishing the proposition above stated, adds: "the *onus probandi in every case* lies upon the party propounding the will, and he must satisfy the conscience of the court, that the instrument so propounded is the will of a free *capable* testator." See also 2 *Phill.*, 323, *Paske vs. Ollat.* 1 *Hagg.*, 384, *Ingram vs. Wyatt.* 1 *Phill.*, 187, *Billinghurst vs. Vickers.* If the fact that the writer of a will takes a benefit under it, excites a suspicion of undue and improper influence, why should it not equally do so if his child takes a benefit under the will?

It is not necessary to examine whether Mortimer Dorsey, being the executor named in the will, would at common law be a competent witness to prove the will. An executor in this State is certainly not a competent witness to sustain the will, because he is directly interested on account of his commissions allowed by law. We object to his evidence, *first*, because he is a party to the record; and *secondly*, because he is interested in the event of the suit. At common law a party to the record in a civil action cannot be a witness, either for himself or his co-suitor in the case. 3 *Bl. Com.*, 371. 20

*Johns.*, 142, *Frear vs. Evertson.*  7 *Gill*, 405, *Owings vs. Emery, et al.  Ibid*, 240, *Selby vs. Clayton.*  1 *Barr.*, 440, *Wolf vs. Finks.*  7 *Bing.*, 395, *Worrall vs. Jones.*  1 *Philip's Evidence*, 69.  The party in whose name an action is brought cannot be merely a trustee for the other person.  1 *Vern.*, 230, *Phillips vs. Duke of Bucks.*  13 *Price*, 512, *Wolley vs. Brownhill.*  1 *Wend.*, 20, *People vs. Irving.*  A party to the record is, in most cases, interested in the costs, or in some other way, and if he be interested to any amount in the event of the suit he is not a competent witness.  The cases cited are conclusive of this question, unless it can be shown that Mortimer Dorsey has no sort of interest or benefit in the subject matter of this suit, either for costs or otherwise; and if his evidence is excluded, the order of the orphans court is unquestionably correct, there not being a particle of evidence, other than his, in the record, to prove that the will was ever read to the testator or that he ever had the slightest knowledge of its contents.

But if we admit that Mortimer Dorsey had no interest which could be affected by the decree below, that does not benefit him, for then we say he could not be aggrieved by the decree, and has therefore no standing in this court as appellant.  The act of 1818, ch. 204, sec. 1, provides, that "the *party* who shall deem himself *aggrieved*," &c., may appeal from any order, decision or judgment of the orphans court.  The word "*party*" clearly means one who is interested in the subject matter in controversy, and one whose interest such order or decree has a direct tendency to affect injuriously; if not so, how can he be *aggrieved* by the judgment or decree?  This is the only sensible construction the act is susceptible of, and is fully sustained by the cases of *Pannell & Smith, vs. The Farmers Bank*, 7 *H. & J.*, 202; *Stevenson vs. Schriver & Wife*, 9 *G. & J.*, 324, and *Ramsay, et al., vs. Glass*, 9 *Gill*, 61.  If therefore he is interested in the event of the suit, he is an incompetent witness; if not interested, he has no legal right to appeal, and the appeal should be dismissed.  Again, the act of 1818, ch. 204, provides, that the appeal must be

taken and made within thirty days after the judgment, which must appear affirmatively upon the record. Now it does not appear from the record when the appeal was taken, but it appears that the record was not transmitted to the Court of Appeals until the 12th of May 1852, fifty-eight days after the order appealed from was passed. It does not therefore appear that the appellant has complied with the act of Assembly, and his appeal should for this reason be dismissed.

But it is said Rebecca H. Dorsey, the *daughter* of Mortimer Dorsey, was a proper party to the proceedings under the act of 1831, ch. 315. This proposition cannot be sustained. She has no interest in the personal estate of the deceased, and is in no way concerned in the settlement thereof. The letters of administration granted to Kitty Warfield were of the personal estate of the deceased. Over the real estate the orphans court has no control, and no question touching the title of the real estate was submitted to that court in the proceedings in the case. If she shall be disposed hereafter to contest her rights with the heirs at law, it will then be the time to investigate her claims.

LE GRAND, C. J., delivered the opinion of this court.

This is an appeal from an order of the orphans court for Howard county, annulling letters of administration previously granted to Kitty Warfield on the personal estate of her deceased brother, Fielder Warfield, and also revoking and annulling the probat which had been allowed of a paper purporting to be the last will of said decedent.

It appears from the record that Fielder Warfield executed his last will and testament on the 27th day of February 1847, and that, after notice to the only heirs at law of the testator, Mortimer Dorsey, the executor named in the will, presented it to the orphans court on the 17th day of March 1847, when, upon the testimony of two of the attesting witnesses, it was admitted to probat. Mortimer Dorsey renounced his executorship, when, upon the recommendation of the three eldest sisters of the testator, letters of administration *cum testamento*

*annexo* were granted to the remaining sister on the 18th of May 1847, who proceeded to discharge the duties of administration, by taking an inventory, passing sundry accounts, paying debts, &c., &c.

On the 9th March 1852, nearly five years after letters of administration had been granted to Kitty Warfield, a caveat to the will was filed by the appellees, praying that the probat of the same be revoked and annulled, upon the ground that the said will had been procured by fraud, misrepresentation and undue influence. This caveat was answered by Mortimer Dorsey and by Kitty Warfield, the first denying all the grounds of objection set out in the caveat, and the other without admitting or denying them.

At the hearing of the cause before the orphans court the appellants proved, by two of the subscribing witnesses, that they had been requested by the testator to witness his will, and that he was in his usual state of mind, as much so as when in health; and also proved by his attending physician, that he had known the testator from the time he was fifteen years of age up to that of his death, and that he was, in his judgment, perfectly competent to transact any common business, and had sufficient mind, memory and understanding to make a valid deed or contract. This opinion of the physician and subscribing witnesses was corroberated by a large number of witnesses, who had known the testator for a great length of time, and who had enjoyed ample opportunity to form a correct opinion as to the condition of his mind. To rebut this, witnesses were examined on behalf of the caveators. We do not deem it essential to set out in detail the testimony of each witness; it is sufficient to say, that among those examined on the part of the caveators there were no professional characters—that is physicians—and that nearly all of them simply gave their *opinion* of his mental incapacity without assigning *the facts* from which that opinion was deduced. In regard to these opinions, unsupported by circumstances, there can be no doubt they were wholly inadmissible, as they did not come from professional experts. *Brooke, et al., vs. Towns-*

10     v.7

*hend,* 7 *Gill,* 10. So far as the testimony of those who gave the facts on which their opinion was founded is concerned, it appears to us to be wholly insufficient to overcome the legal presumption, that all men are sane until the contrary be shown, or to disprove the strong and positive evidence of the witnesses who testified to the soundness of the memory and understanding of the testator. Some of the facts given by the witnesses in support of their opinion of the unsoundness of the mind of the testator, are perfectly futile—for instance, a difference in political opinion from the witness, or want of knowledge of the good qualities of a horse. If every man is to be deemed insane because he differs from another in political sentiments, the whole nation could be proved to be in that condition, and in each particular case the sanity or insanity of the party would depend upon the political notions of the witness who happened to be examined. Such testimony, surely, cannot be entitled to much weight. We regard that which relates to the taciturnity and general unobtrusiveness of the testator, and the occasional participation of his mother and sister in the management of a part of his business, as insufficient to overcome the evidence adduced in favor of his legal capacity.

It appears from the record that the testator was of very limited education, and that his will was executed by the affixing of his mark instead of his signature. To prove he was fully aware of the contents of the paper, Mortimer Dorsey, the executor named in the will, was examined. He proved that it had been read over to him, and was in accordance with his directions and met with his approval. It does not appear from anything in the record, whether or not the majority of the judges of the orphans court who passed the order appealed from considered him a competent witness. Looking to the general character of the proof touching the capacity of the testator, it is not unreasonable to suppose the majority of the court were of opinion he was not competent, and, therefore, sustained the caveat on the ground that there was no proof of the knowledge of the testator of the contents

of the paper which he executed. The legal significance of the execution of papers was considered by this court in the case of *Cramer vs. Crumbaugh*, 3 *Md. Rep.*, 491.

We entertain no doubt, however, of the competency of Mortimer Dorsey. He had renounced his executorship and took no interest under the will; he was in no manner, whatever, interested in the result of the inquiry before the orphans court. In the case of *Jackson & Wallington, vs. Whitehead*, 3 *Phillimore*, 577, Sir John Nicholl said: "It is not to be denied, that in a great variety of cases executors have been dismissed after proceedings have been had; but it is said that he has appeared in the cause *as a party*, and also *been sworn as an executor;* and these circumstances are considered as precluding him. I have," continues he, "looked through a great variety of cases, and have not found any one in which the circumstance of a person having been sworn as an executor has ever been that on which the court refused to allow him to renounce, nor has it ever been made a material ground."

That case was much stronger than the one now before us. There the executors had taken the usual oaths as executors prior to the filing of the caveat. In the case under consideration the executor named in the will never assumed to act, but, on the contrary, renounced his right to act as such. See also, in affirmance of the competency of the witness, *Goodtitle vs. Welford*, 1 *Douglas*, 139. *Fountain vs. Coke*, 1 *Mod.*, 107. *Lowe vs. Jolliffe*, 1 *Wm. Blackstone*, 365.

In regard to the objection, urged on behalf of the appellees, to the right of Mortimer Dorsey to appeal, it need only be observed, that whether tenable or not, there can be no doubt of this case being properly before us, inasmuch as there is not, nor can there be, any question as to the right of appeal of Rebecca Dorsey, who is directly interested in the decision of the orphans court.

Discovering nothing in the case to lead us to the belief that Fielder Warfield had not the necessary capacity to make a valid testamentary disposition of his property, and seeing that the contents of his will were made known to, and approved

by him, before and at the time of its execution, we accordingly reverse the order of the orphans court.

*Order reversed, with costs in both courts.*