JONES ET AL. *v.* SAAH ET AL.

[No. 328, September Term, 1970.]

*Decided March 29, 1971.*

*Motion for remand filed by appellees April 12, 1971; denied May 10, 1971.*

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, FINAN, SINGLEY, SMITH and DIGGES, JJ.

*Andrew W. Starratt, Jr.*, for appellants.

Submitted on brief by *Robert E. Bullard* for appellees.

FINAN, J., delivered the opinion of the Court.

In December, 1966, the appellees (Saahs) entered into identical contracts with appellants Jones and Ray. Each contract provided that the appellants would sell certain lots to the Saahs for $28,800, and that each of the appellant-sellers would take back a first deed of trust for $20,400 in order to finance the purchase of the property, this deed of trust to be subordinated to a construction loan should the Saahs build on the property.

Each of the contracts was "subject to I-1 zoning approval to be obtained and paid for by the purchaser [appellees] and each contract contained the following pertinent "Special Provisions":

> "1. Purchaser to apply for Zoning on or before May 30, 1967.
>
> \* \* \*
>
> "3. Settlement to be made within 30 days after approval of Zoning to I-1.
>
> "4. In the event said zoning is not secured by May 30, 1968, this contract shall become Null

"and Void and both parties shall be relieved of any further liability, and in that event the deposit of Two Thousand Dollars ($2,000.00) shall be returned to purchaser [appellees] without further question."

The appellees applied for the necessary zoning before May 30, 1967, but it was apparently not granted in time. On May 6, 1968, without the required zoning having been accomplished, the Saahs notified the appellants that they intended to settle on May 23, 1968. The appellants did not appear, and on July 16, 1968, notified the broker that the contracts were null and void, and that he should return the deposit to the Saahs.

The Saahs filed separate suits for specific performance on both contracts in the Circuit Court for Montgomery County and the actions were consolidated at trial. On August 10, 1970, Judge Shook ordered specific performance of each contract for the following reasons:

"The Court finds from the evidence that the language in Paragraph 4 of the contract was beneficial to the purchaser and in no way affected the sellers.

"The Court finds from the law under the case of *Sears v. Polan's,* 250 Md. 525, that the purchasers are now entitled to specific performance. The Court does find that that case is on all fours with this and feels that it must grant the relief prayed."

We are of the opinion that the lower court's reliance on *Sears v. Polan's* was misplaced, and the decision which followed was in error. Accordingly, we reverse.

In *Sears v. Polan's 5¢ to $1.00 Store of Annapolis, Inc.,* 250 Md. 525, 243 A. 2d 602 (1968) a decree of specific performance was granted to the purchasers of certain real estate. The contract of sale in *Sears* provided that upon acceptance the purchaser was given 90 days in which to conduct certain tests on the land, and 10 days

after that in which to submit an application for rezoning of the tract. Also, the contract *expressly provided* that the *purchaser was given the right to waive the rezoning condition.*

Because of the conversion then taking place in Anne Arundel County from county commissioners to a charter form of government, many zoning applications, including that of purchasers in *Sears,* lay dormant. After many delays in obtaining rezoning, the purchasers elected to waive the rezoning condition. The only argument made by the sellers in *Sears* which is pertinent to our present discussion was that the purchaser did not pursue the rezoning of the property with proper diligence. In discussing that issue, we noted that the delays were not attributable to any fault of the purchaser, but rather to the changeover in the county government, and noted that "the purchaser waived the rezoning requirement, *an election given it under the contract.*" (Emphasis supplied) 250 Md. 534.

Aside from the fact that the contract in the case at bar had no provision allowing the Saahs to waive the zoning condition, there are other considerations which we will discuss that distinguish this case from the holding in *Sears.*

It is interesting to note that the appellees, whose judgment in the lower court rested entirely on *Sears,* apparently did not believe it to be controlling and never mentioned it in their brief. Instead, they rely on the argument that Paragraph 4 of the Special Provisions was for the benefit of the purchasers and could therefore be waived by them, and once waived, entitled them to demand settlement on May 23, 1968. See *Barnes v. Euster,* 240 Md. 603, 606, 214 A. 2d 807 (1965).

The problem with such a contention is that it was answered by this Court six years ago in *Metz v. Heflin,* 235 Md. 550, 201 A. 2d 802 (1964), a case, which for all practical purposes, *is* on "all fours" with the case before us. In *Metz,* as in this case, the contract of sale provided that

it was subject to rezoning to be obtained by the purchaser, and that the contract would become void if the zoning did not come about by a certain date. In *Metz* the seller also agreed to take back a first deed of trust. The purchaser in *Metz* applied for the rezoning, but it was not granted until after the date set forth in the contract of sale; the sellers refused to settle and returned the deposit to the purchaser, who brought suit for specific performance. In *Metz* the trial court dismissed the purchaser's bill of complaint and we affirmed the decision.

Judge Hammond (now Chief Judge), writing for the Court in *Metz,* noted that the seller was to take back a deed of trust which gave him a substantial interest in the property. Accordingly, any change in the zoning to a greater density (to a commercial use in our case) would benefit the sellers as much as the purchasers. The same reasoning applies to the case at bar, and the Saahs therefore cannot unilaterally waive a condition which benefited both parties to the contract.

As in *Metz,* the purchasers' securing of a contemplated rezoning by a certain date was a condition precedent to the sellers' (appellants) promise to convey the property in the case at bar. When the Saahs did not meet the condition, the obligation on the part of the appellants terminated. Because of Paragraph 4 of the Special Provisions, the contracts in question became null and void on May 30, 1968. There were no contracts to be specifically enforced. *Metz v. Heflin, supra,* at 554; 55 Am. Jur., *Vendor and Purchaser,* § 580. See also, 76 A.L.R.2d 1195, § 3 (a) (b), *Effect of Provisions in Real Estate Option or Land Sale Contract Making the Contract Subject to Zoning or Rezoning of the Property.*

For the same reasons that we affirmed in *Metz,* we reverse in this case.

*Judgments reversed; appellees*
*to pay costs.*