899 A.2d 156

Diana KNIGHT

v.

PRINCESS BUILDERS, INC. et al.

No. 67, Sept. Term, 2005.

Court of Appeals of Maryland.

May 17, 2006.

**32**

Brian G. West (Koehler & West, Chtd., Towson), on brief, for petitioners.

Jonathan M. Wall (Hyatt, Peters & Weber, LLP, Annapolis), on brief, for respondents.

David R. Forrer (Semmes, Bowen & Semmes, P.C., Baltimore), on brief, for respondents.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA, and GREENE, JJ.

BATTAGLIA, J.

The case *sub judice* presents us with two issues for our resolution. The first question presented is whether a company, Princess Builders, Inc. that entered into a contract to purchase real property from the Personal Representative of an intestate estate, may pursue an appeal from an Orphans' Court's order directing the Personal Representative to sell the real property to one of the Estate's heirs, Diana Knight. We hold that Princess Builders is properly considered a "party" under Maryland Code (1974, 2002 Repl.Vol.), Section 12–502 of the Courts and Judicial Proceedings Article governing such appeals.

As the second issue, Ms. Knight asserts that there was no enforceable agreement between the Estate and Princess Builders after August 31, 2003 because Princess Builders failed to satisfy a contingency in the contract. We determine that because the contingency was not drafted for Ms. Knight's benefit, she may not use it to avoid the agreement.

### Facts

In 2002, Mary Martha Isabella Knight died intestate while owning two parcels of real property in Anne Arundel County

known as Lot 20, upon which a house was located, and an undeveloped parcel Lot 21, known, respectively, as 1612 and 1614 Severn Road, Severn, Maryland (collectively the "Property"). When two previous personal representatives were unable to dispose of the real property held by the Estate, the Orphans' Court for Anne Arundel County appointed David R. Forrer, an attorney, as the Successor Personal Representative.

The Personal Representative offered the Property for sale through a realtor and received a bid from the Respondent, Princess Builders, in which Princess Builders offered $75,000 for Lot 21, the undeveloped portion of the Property, or $145,000 for the entire Property. The Personal Representative informed the twelve heirs of the Estate, including the Petitioner, Diana Knight, of the offer and solicited a counterbid from them, to which Ms. Knight responded and expressed an interest. The Personal Representative instructed her to make her offer in writing. Three days later, Ms. Knight faxed a letter to the realtor offering $146,000 for both lots. In response, the Personal Representative contacted Ms. Knight and informed her that the offer had to be made in the form of a contract. On June 5, 2003, the Personal Representative received Ms. Knight's contract, which reaffirmed her prior offer.

After he received the contract from Ms. Knight, the Personal Representative, nevertheless, entered into a contract for sale with Princess Builders for Lot 21 for the price of $75,000 and permitted the heirs to have another opportunity to attempt to purchase Lot 20. On June 6, 2003, the Personal Representative filed a Petition to Sell Real Estate requesting the Orphans' Court's approval of the sale, as required by a contingency contained in the contract. None of the heirs offered to purchase Lot 20. After conferring with Princess Builders about the company's interest in acquiring Lot 20, the Personal Representative, on June 17, 2003, filed a Supplemental Petition to Sell Real Estate to obtain the Orphans' Court's approval to sell both lots to Princess Builders for $145,000.

Princess Builders's contracts to purchase the lots contained the following contingency:

> This Contract is contingent on buyer obtaining a building permit for the house of buyers choice [b]y August 31, 2003 or this contract is declared null and void and of no further effect with deposit being declared null and void and refunded as well. . Thus, any Backup Contract could then become primary. Time being of the essence for Settlement date of Sept 9, 2003.

On June 23, 2003, Ms. Knight filed an objection to the sale with the Orphans' Court and requested a hearing. In her petition, Ms. Knight alleged that she should be permitted to purchase both lots because she had submitted a higher offer than Princess Builders.

Approximately six months later, on December 16, 2003, a hearing on the Petition to Sell Real Estate and Ms. Knight's objection thereto was held. Subsequently, the Orphans' Court issued an order directing the Personal Representative to sell the Property to Ms. Knight unless, within ten days, the Estate received an offer to purchase the Property for more than the $146,000 offer made by Ms. Knight; no such offer was received. On January 2, 2004, Princess Builders filed a Notice of Appeal to the Circuit Court for Anne Arundel County.

On May 4, 2004, the Circuit Court held a hearing, at which time the Personal Representative moved to be joined as a party because he was a party to both the contract of sale with Princess Builders and would be to that with Ms. Knight as well.[1] The Circuit Court granted the motion. During the

---

1. Maryland Rule 2–212 provides for permissive joinder of parties and states in pertinent part:

 (a) **When permitted.** All persons may join in one action as plaintiffs if they assert a right to relief jointly, severally, or in the alternative in respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences, and if any question of law or fact common to all these persons will arise in the action. All persons may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative any right to relief in respect to or arising out of the same transaction, occurrence, or

hearing, testimony was taken from the Personal Representative, the realtor retained by the Personal Representative to facilitate the sale of the Property, and Ms. Knight. Thereafter, the Circuit Court issued a Memorandum Opinion in which the judge held that the Personal Representative acted in accordance with his fiduciary duties when he accepted the offers from Princess Builders rather than the contract submitted by Ms. Knight and reversed the determination of the Orphans' Court, thereby, reinstating the contracts with Princess Builders for the purchase of both Lot 20 and Lot 21.

Thereafter, Ms. Knight filed a Motion to Alter or Amend, or Revise a Judgment, wherein she challenged Princess Builders's standing to pursue an appeal in the Circuit Court. The Circuit Court denied her motion on June 14, 2004, and Ms. Knight filed her Notice of Appeal on July 2, 2004.

The Court of Special Appeals, in a reported opinion, determined that Princess Builders had standing to pursue an appeal to the Circuit Court based on its interpretation of the term "party." *Knight v. Princess Builders, Inc.,* 162 Md.App. 526, 875 A.2d 771 (2005). The intermediate appellate court noted that under this Court's prior decisions any "aggrieved party" may note an appeal to the circuit court from the orphans' court. Ultimately, the court concluded that "a contract purchaser whose right to purchase the estate property has been adversely affected by an orphans' court order is aggrieved and therefore has standing to appeal." *Id.* at 537, 875 A.2d at 777.

The Court of Special Appeals also determined that the contracts between the Personal Representative and Princess Builders remained enforceable throughout the proceedings in the Orphans' Court and Circuit Court. Moreover, the inter-

---

series of transactions or occurrences, and if any question of law or fact common to all defendants will arise in the action. A plaintiff or defendant need not be interested in obtaining or defending against all relief demanded. Judgment may be given for one or more of the plaintiffs according to their respective rights to relief and against one or more defendants according to their respective liabilities.

mediate appellate court concluded that because the building permit contingency in the contract between the Estate and Princess Builders was not made for Ms. Knight's benefit, she could not use it to challenge the enforceability of the contract.

Ms. Knight filed a petition for writ of certiorari with this Court and presented the following questions for our review:

1. Did the circuit court lack subject matter jurisdiction to entertain Princess Builders's appeal from the orphans' court decision?

2. Was Princess Builders's contract of sale still enforceable, or did it expire on its own terms before the hearing in the circuit court?

We granted the petition and issued the writ. *Knight v. Princess Builders*, 389 Md. 124, 883 A.2d 914 (2005). We hold that under Maryland Code (1974, 2002 Repl.Vol.), Section 12–502 of the Courts and Judicial Proceedings Article and this Court's prior decisions addressing the scope of the term "party" as used therein, Princess Builders may properly be considered a party who may note an appeal from the decision of the Orphans' Court. Moreover, we determine that because the building permit contingency was not included in the contracts for Ms. Knight's benefit, she may not use it to nullify the contracts between the Personal Representative and Princess Builders. Therefore, we affirm the decision of the Court of Special Appeals.

### Discussion

Ms. Knight argues that Princess Builders was not a "party" to the proceeding before the Orphans' Court as required by Section 12–502 of the Courts and Judicial Proceedings Article. She urges this Court to limit the definition of "party" to those persons who are named as such on the record. Thus, Ms. Knight contends that the only "parties" to the underlying dispute concerning the sale of the Property were the Personal Representative and Ms. Knight. According to Ms. Knight, although Princess Builders was affected by the suit, it was not a "party."

Alternatively, Ms. Knight argues that the Circuit Court's decision was invalid because at that time Princess Builders had no standing to file an appeal due to Princess Builders's failure to fulfill the condition precedent of obtaining a building permit, which resulted in the termination of the contract on August 31, 2003.

Conversely, Princess Builders asserts that the term "party" as used in Section 12–502 of the Courts and Judicial Proceedings Article consistently has been interpreted to include individuals and entities whose interests are implicated in the proceedings in addition to the named parties. Moreover, Princess Builders argues that the fact that it appeared and participated in the hearing before the Orphans' Court was sufficient to imbue it with "party" status.

Princess Builders also argues that it waived the building permit condition precedent and that both parties to the contract reaffirmed their intention to enforce the contracts. Moreover, Princess Builders asserts that Ms. Knight lacks standing to enforce provisions of a contract to which she was not a party.

The Personal Representative, David Forrer, contends that Princess Builders might properly be considered a "party" to the Orphans' Court proceeding under Section 12–502 of the Courts and Judicial Proceedings Article. He notes that Princess Builders was provided with notice of the Orphans' Court's notice of postponement of the hearing on the sale of the Property, that it was served with a copy of Ms. Knight's prior counsel's Entry of Appearance and a copy of her second Request for Postponement, and that Princess Builders filed an opposition to the Request for Postponement. Therefore, the Personal Representative concludes that Princess Builders should properly be considered a party under Section 12–502 of the Courts and Judicial Proceedings Article.

### *Who May Properly Be Considered a Party under Section 12–502 of the Courts and Judicial Proceedings Article*

Ms. Knight urges this Court to interpret "party" as used in Section 12–502 of the Courts and Judicial Proceedings Article

to limit those individuals or entities entitled to appeal to the parties of record in the proceeding before the Orphans' Court. Conversely, Princess Builders seeks to interpret "party" to include any person or entity detrimentally affected by a decision of the Orphans' Court. Based on the language of the applicable statutes, their predecessors, and our relevant case-law, we conclude the Princess Builders was a proper party to pursue an appeal from the Orphans' Court's decision.

Section 12–502 of the Courts and Judicial Proceedings Article provides in relevant part:

(a) *In general; exception in Harford and Montgomery counties.*—(1)(i) Instead of a direct appeal to the Court of Special Appeals pursuant to § 12–501 of this subtitle, a party may appeal to the circuit court for the county from a final judgment of an orphans' court.

(ii) The appeal shall be heard de novo by the circuit court.

(iii) The de novo appeal shall be treated as if it were a new proceeding and as if there had never been a prior hearing or judgment by the orphans' court.

(iv) The circuit court shall give judgment according to the equity of the matter.

Md.Code (1974, 2002 Repl.Vol.), § 12–502(a) of the Courts and Judicial Proceedings Article. At the outset we note that in *Rome v. Lowenthal*, 290 Md. 33, 34, 428 A.2d 75, 76 (1981), we determined that Section 12–502 of the Courts and Judicial Proceedings Article, which authorizes a de novo appeal to the circuit court from an orphans' court ruling, must be read in conjunction with Section 12–501 of the Courts and Judicial Proceedings Article because the two statutes delineate complementary mechanisms by which review of an orphans' court's decision may be sought. Section 12–501 of the Courts and Judicial Proceedings Article provides in pertinent part:

(a) *In general.*—A party may appeal to the Court of Special Appeals from a final judgment of an orphans' court.

Md.Code (1974, 2002 Repl.Vol.), § 12–501(a) of the Courts and Judicial Proceedings Article. In both Sections, there is refer-

ence to a "party" appealing, but there is no definition of "party" included in the Subtitle.

The statutes governing appeals from decisions of the orphans' courts prior to the recodification of 1957 delimited the term "party" to those individuals and entities "who may deem himself aggrieved by such decree." *See, e.g.,* Md.Code (1951), Art. 5 § 64; Md.Code (1939), Art. 5 § 64; Md.Code (1924), Art. 5 § 64; Md.Code (1888), Art. 5 § 58; Md.Code (1862), Art. 5 § 40; Md.Code (1860), Art. 5 § 39; 1818 Md. Laws, Chap. 204. As we noted in *Webster v. Larmore,* 270 Md. 351, 311 A.2d 405 (1973), *modified on other grounds by Piper Rudnick LLP v. Hartz,* 386 Md. 201, 872 A.2d 58 (2005), when the statute was revised and recodified in 1957, the qualifying language defining "party" as the individual or entity "aggrieved" by an orphans' court's decision was omitted "presumably as surplusage." *Webster,* 270 Md. at 353, 311 A.2d at 406. We concluded that "[t]he omission in no way attenuates the teaching of our earlier cases." *Id.* Therefore, we may derive some guidance from examining our prior opinions analyzing the predecessor statutes to the presents incarnations as Sections 12–501 and 12–502 of the Courts and Judicial Proceedings Article.

In 1777, the General Assembly enacted the first statute establishing orphans' courts in the counties for the probate of estates, both testate and intestate. 1777 Md. Laws, Chap. 8. As part of that first enactment, the General Assembly provided a means for individuals to obtain judicial review of a decision of the orphans' courts:

That it shall and may be lawful for all and every person or persons, who think themselves aggrieved by such decree or judgment, to appeal therefrom, within sixty days after the award or rendition thereof, to the general court, or chancellor of this State, at his, her or their election, provided that bond be given with good security to prosecute the said appeal with effect, and within thirty days after the appeal entered, and to pay such costs and damages as shall be adjudged on the hearing such appeal, or attachment or execution may issue as if no such appeal had been made.

1777 Md. Laws, Chap. 8, section 11. Twenty-one years later, the General Assembly repealed the prior act, and enacted a new statutory scheme that provided:

> In case the adjudication of any orphans court, to whom any such will or codicil, respecting personal property, or appointing an executor, either before or after it shall be exhibited for probat, shall be against the said will or codicil, it shall not be received for probat in any other county; provided nevertheless, that either party conceiving him or herself aggrieved by the decision of the said court, relative to the probat, may, within three days after such decision, enter an appeal to the court of chancery, or the general court of the shore whereon such orphans court is held, and the said appeal shall stay further proceedings of the orphans court, provided an attested copy of the whole proceedings, under the seal of the office, be filed in the said chancery court, or general court, within sixty days thereafter.

1798 Md. Laws, Chap. 101, section 11. In this version of the statute, the General Assembly first defined the class of individuals entitled to appeal a decision of the orphans' courts as those "aggrieved" by the decision of the court.

In 1802, the General Assembly once again revised the statutory scheme governing the review of decisions of the orphans' courts, stating:

> AND BE IT ENACTED, That any person who may conceive him or herself aggrieved by a judgment, decree, decision or order of the orphans court, may appeal to the county court of the county where such judgment, decision or order, may be made, and that on such appeal the county court shall have the same power, jurisdiction and authority, that the general court or chancery court would have had on an appeal to either of those courts under the original act; *Provided nevertheless,* that nothing herein contained shall be construed to affect the right of appeal from the orphans court to the court of chancery or *general court* ... as allowed by the act to which this is a supplement.

1802 Md. Laws, Chap.101, section 3. Through this legislation, those people "aggrieved" by the actions of the orphans' courts regarding the probate of an estate could seek judicial review in what would become the circuit courts of the State of Maryland, then denoted as the county courts, as an alternative to taking an appeal to either the Court of Chancery or the General Court.

In 1818, the General Assembly combined the prior statutes regarding the alternative avenues of appealing from the orphans' courts into a single statute in an effort to better regulate the appeals from the orphans' courts. Chapter 204 of the Maryland Laws of 1818 provided in pertinent part:

Sec. 1. *Be it enacted, by the General Assembly of Maryland,* That in all decrees, orders, decisions and judgments, hereafter to be made by any orphans court of this state, the party or parties who shall deem him, her or themselves, aggrieved by such decree, order, decision or judgment, may appeal to the court of appeals of this state, provided such appeal be made within thirty days after such decree, order decision or judgment.

2. *And be it enacted,* That if upon an appeal being entered, the parties shall mutually agree and enter their assent in writing, to be filed by the register of the orphans court, that the appeal shall be made to the county court, the orphans court shall direct a transcript of the proceedings to be transmitted by the register to the county court, whose decision shall be final.

1818 Md. Laws, Chap. 204.

The first opportunity we had to address the scope of the term "party" under this statute occurred in 1837 in *Stevenson v. Schriver,* 9 G. & J. 324 (1837). In that case, Elizabeth Stevenson, the widow of the decedent, Josias Stevenson, Jr., filed a petition in the Orphans' Court for Baltimore City asserting that she was a creditor of the estate of her late husband because he had not invested her non-marital property for her benefit as he had promised. The Orphans' Court

ordered the estate to pay the debt. The creditors and heirs of Josias Stevenson appealed to this Court.

We determined that under Chapter 204 of the Maryland Laws of 1818, whereby "a party deeming himself aggrieved by the decree, order, or decision of the Orphans Court, may appeal to the court of Appeals," the term "party":

> in this section of the Act of Assembly, is not used in a technical sense, necessarily importing a litigant before the court, in the proceedings in which the decree or order passed, at the time of or antecedently to its passage; but may also mean one on whose interests the decree or order has a direct tendency to operate injuriously, and who, after its passage may appear in court and claim the privilege of appeal. Many, if not most of the orders of the Orphans court, are wholly *ex parte,* and yet the right to appeal has never been denied to him who has sustained injury thereby.

*Id.* at 335. Based on our interpretation of 1818 Maryland Laws, Chapter 204, we concluded that the creditors and legatees had the right to appeal the decision of the Orphans' Court because the order "ha[d] direct tendency to operate injuriously" with respect to their interests in the estate. *Id.* at 335.

We reached a similar conclusion in *Dorsey v. Warfield,* 7 Md. 65 (1854). In *Dorsey,* the will of the decedent, Fielder Warfield, was submitted to the Orphans' Court for Howard County for probate in 1847. *Id.* at 72. Five years later, Eleanor Warfield filed a caveat to the will and sought to have the probate of the will revoked because she alleged that the will was the product of fraud and undue influence. *Id.* The personal representative responded by denying all of the grounds of the caveat. The Orphans' Court upheld the objection to the will. Rebecca Dorsey, one of the legatees under the will, filed an appeal with this Court, although she did not participate in the proceeding. *Id.* at 73. Reversing the decision of the Orphans' Court, we held that "there can be no doubt of this case being properly before us, inasmuch as there is not, nor can there be, any question as to the right to appeal

of Rebecca Dorsey, who is directly interested in the decision of the orphans court." *Id.* at 75.

In 1860, the General Assembly revised and re-enacted the statute governing the right to appeal from orphans' courts' decisions, which provided:

> In all decrees, orders, decisions and judgments made by the Orphans' Court, the party who may deem himself aggrieved by such decree, order, decision or judgment, may appeal to the Court of Appeals; *Provided,* such appeal be made within thirty days after such decree, order, decision or judgment.

Md.Code (1860), Art. 5 § 39. In *Cecil v. Harrington,* 18 Md. 510 (1862), we addressed the scope of the newly revised statute. In that case, the administrator of the Estate of William Cecil and some of the decedent's relatives, other than William Cecil's daughters, filed a petition with the Orphans' Court for Baltimore City alleging that each of his daughters had received an advance equal to their distributive shares of the estate and "asking that they be excluded from the distribution of the residue." *Id.* at 510. The decedent's daughters denied receiving any advances on their inheritances and alleged that the disbursed funds were payment for services provided to their father. *Id.* The Orphans' Court dismissed the petition. *Id.* James Cecil, one of the decedent's sons and a legatee, who was not a party to the proceedings on the petition, appealed to this Court. *Id.*

Addressing whether Cecil could seek appellate review, we noted:

> The appellant in this case, was not a party to the original proceedings in the Orphans' Court, but being interested as heir and distributee, he might be said to be aggrieved by the decision, which was adverse to his interest. Under the rulings of this court he was entitled to an appeal, although not technically a party. *Stevenson v. Schriver,* 9 G. & J., 324. *Parker v. Gwynn,* 4 Md. 423.

*Id.* at 512. Although we found that James Cecil was an appropriate party to file the appeal, we dismissed the appeal

because he failed to reduce the "depositions of the witnesses" to writing as required under Maryland Code (1860), Article 5 Section 40 (a party may not appeal "unless he shall immediately certify his intention, and request that the testimony may be reduced to writing, that in such case the depositions shall be at the cost of the party" making the request.).

In *Gunther v. State ex rel. Bouldin*, 31 Md. 21 (1869), the bankrupt guardian admitted that he used all of the $2,000 with which he had been entrusted with until the minor's twenty-first birthday for his own benefit. The Orphans' Court removed the bankrupt guardian and appointed a successor guardian. When the Orphans' Court ordered the successor guardian to file suit against the sureties of the original guardian's bond, the sureties filed an appeal.

We determined that:

[a]ny party who may deem himself aggrieved by any order or decree of the Orphans' Court may appeal therefrom, and it has been decided that any one whose *interests* any such order *may have a tendency* to operate injuriously is a *party* entitled to an appeal. The orders complained of in this case directed suit to be brought on the guardian's bond, and passed the account of the guardian showing his indebtedness as such. This account would be *prima facie* evidence against the sureties in a suit on the bond, and to this extent would have a tendency to operate injuriously upon their interests.

*Id.* at 33 (citation omitted and emphasis in original). We interpreted the statute, Section 58 of Article 5, as permitting *any* party whose interests the order had a *tendency* to impair to seek review in this Court. Therefore, we denied the motion to dismiss the appeal and affirmed the order of the Orphans' Court.

In 1888, the General Assembly again revised the statute governing the right to seek appellate review of decisions of the orphans' courts; the statute provided in relevant part:

From all decrees, orders, decisions and judgments made by the orphans's court, the party who may deem himself ag-

grieved by such decree, order, decision or judgment, may appeal to the Court of Appeals.

Md.Code (1888), Art. 5 § 58. In *Meyer v. Henderson,* 88 Md. 585, 41 A. 1073 (1898), we were presented with an appeal filed by a legatee who did not appear as a party before the Orphans' Court of Baltimore City and had to address the scope of the term "party" within the governing statute, Section 58 of Article 5 of the 1888 Code.

In 1893, the will of Frederick Meyer was admitted to probate without contest. Two years later, William Henderson, who was not named in the will, filed a caveat to the will, asserted that he was the son of the testator's deceased sister, and claimed that at the time of the execution of the will, the testator was not of sound mind. The personal representatives of the estate filed an answer denying all of the allegations. Catherine Meyer, a legatee under the will who was not a party of record in the proceedings, also filed an answer relying upon the assertions made by the personal representatives. The Orphans' Court revoked the probate of the will and declared it void. Ms. Meyer sought appellate review. As a threshold issue we considered whether Ms. Meyer could pursue the appeal under Section 58 of Article 5 and determined:

It is also said that the appellant is not a party to the proceedings, and cannot appeal from the order of the court below. While the appellant was not a party of record, yet she is the one most interested in sustaining the validity of the will, and is, consequently, the party aggrieved by the order of the Orphans' Court improperly revoking the probate.

By Code, art. 5, sec. 58, it is provided that from all decrees, orders, decisions, and judgments made by the Orphans' Court, the party who may deem himself aggrieved by such decree, order, decision, or judgment may appeal to the Court of Appeals. In *Stevenson v. Schriver,* 9 G. & J. [at] 335, it was said: 'The term "party," in this section of the act, is not used in a technical sense, necessarily importing a litigant before the court, in the proceedings in which the decree or order passed at the time of or antecedently to its

passage, but may also mean one in whose interest the decree or order has a direct tendency to operate injuriously and who after its passage, may appear in court, and claim the privilege of appeal.' *Cecil v. Cecil,* 19 Md. 72; *Dorsey v. Warfield,* 7 Md. 65.

*Id.* at 590–91, 41 A. at 1075. We interpreted the term "party" to permit Ms. Meyer, as a legatee under the will, to pursue her appeal despite not being a party of record before the Orphans' Court.

In 1904, Section 58 of Article 5 was renumbered as Section 60, and thereafter was renumbered again as Section 64 in the 1924 Maryland Code, where it remained until 1951. The statute as it appeared in the 1951 Code provided:

> From all decrees, orders, decisions and judgments made by the orphans' court, the party, who may deem himself aggrieved by such decree, order, decision or judgment, may appeal to the court of appeals.

Md.Code (1951), Art. 5 § 64. Also, in the 1951 Code, the right to appeal to the circuit court from the orphans' court provided that:

> [a]ny party who shall deem himself aggrieved by any decree, order, decision, or judgment of an Orphans' Court may appeal therefrom to the circuit court for the county, or to the Superior Court of Baltimore City, in lieu of the direct appeal to the Court of Appeals provided in Section 64 of this Article. Any such appeal shall be heard de novo by said circuit court or Superior Court, as the case may be, and from the decision of any such court there shall be a further right of appeal to the Court of Appeals.

Md.Code (1951), Art. 5 § 69. In 1957, the General Assembly revised the terms of the statute governing the right to appeal to the circuit court and the Court of Appeals and omitted the language concerning whether the party was "aggrieved." The revised provisions stated:

> Any party may appeal to the Court of Appeals any decree, order, decision or judgment of an orphans' court.

* * *

Instead of a direct appeal to the Court of Appeals pursuant to § 9 of this article, any party may appeal to the circuit court for the county or to the Superior Court of Baltimore City from any decree, order, decision, or judgment of an orphans' court. Any such appeal shall be heard de novo by said circuit court or Superior Court, as the case may be, and such court shall give judgment according to the equity of the matter. From the final judgment or determination of the said circuit court or Superior Court there shall be a further right of appeal to the Court of Appeals pursuant to the provisions of § 1 of this article.

Md.Code (1957), Art. 5, §§ 9, 25.

In *Webster v. Larmore, supra,* 270 Md. 351, 311 A.2d 405 (1973), we had the opportunity to construe the revised language of Section 9 of Article 5 of the 1957 Maryland Code relative to it predecessors, in light of the omission of the language "who shall deem himself aggrieved by any decree." In that case, in 1964, the decedent, Julia Pollitt executed a will naming her future husband, Austin Brumley, as the heir to the residue of her estate. Ms. Pollitt and Mr. Brumley were married and divorced by June, 1966. In 1970, Ms. Pollitt died and her will was subsequently submitted to probate.

In the Orphans' Court, Walter Webster, the Personal Representative, sought an order permitting him to distribute the residue of the Estate to Mr. Brumley's widow and children. After a hearing, the Orphans' Court ordered the residue of the Estate to be distributed to Ms. Pollitt's next of kin. Mr. Webster sought and obtained authority from the Orphans' Court to appeal to this Court at the Estate's expense.

The threshold issue before us was whether Mr. Webster was entitled to seek appellate review under Section 9 of Article 5, which as previously stated, provided:

Any party may appeal to the Court of Appeals from any decree, order, decision or judgment of an orphans' court.

We noted that the revised statute "must be construed in the light of the restrictive gloss imposed by our decisions." *Web-*

*ster,* 270 Md. at 353, 311 A.2d at 406. We further observed that the statute, as revised in 1957, excised the language "who may deem himself aggrieved by such decree, order, decision or judgment," "presumably as surplusage." *Id.* We stated that "[t]he omission in no way attenuates the teaching of our earlier cases," *id.,* and concluded that although Mr. Brumley's widow and children might have been aggrieved by the order, and thus, could have appealed under Article 5, Section 9. *Id.* at 354, 311 A.2d at 406. Mr. Webster, however, could not as he "could be in no way aggrieved" by the Orphans' Court's order because he was granted protection from liability by the Orphans' Court's order directing distribution and thus, his interests were not adversely affected by the order. *Id.*

In 1973, as part of the General Assembly's extensive revision of the Maryland Code, Section 9 of Article 5 was recodified as Section 12–501 of the Courts and Judicial Proceedings Article. The statute provided:

A party may appeal to the Court of Special Appeals from a final judgment of an orphans' court. However, if the final judgment was given or made in a summary proceeding, and on the testimony of witnesses, an appeal is not allowed under this section unless the party desiring to appeal immediately gives notice of his intention to appeal and requests that the testimony be reduced to writing. In such case the testimony shall be reduced to writing at the cost of the party requesting it.

Similarly, Article 5, Section 25 was recodified as Section 12–502 of the Courts and Judicial Proceedings Article and provided in pertinent part:

(a) *In general: exception in Montgomery County.*—Instead of a direct appeal to the Court of Special Appeals pursuant to § 12–501, a party may appeal to the circuit court for the county or to the Superior Court of Baltimore City from a final judgment of the orphans' court. The appeal shall be heard de novo by the appellate court, and it shall give judgment according to the equity of the matter. This subsection does not apply to Montgomery County.

Any of the other changes subsequently made by the General Assembly with respect to the language of Section 12–501 and 12–502 of the Courts and Judicial Proceedings Article have not altered any of the language at issue in the present case.

■ Based on the foregoing, we must determine if the right to appeal from an action of the Orphans' Court properly may be extended to a contract purchaser of real estate held by an estate. Throughout our interpretations of the various incarnations of the statutes presently denoted as Section 12–501 and 12–502 of the Courts and Judicial Proceedings Article, we have consistently noted that the only requirement is that the individual or entity seeking appellate review must be "aggrieved" by the Orphans' Court's decision, meaning that the actions of the Orphans' Court must have a "direct tendency" to adversely affect the interests of the "party." In the present case, Princess Builders's interests under the contracts with the Personal Representative were negatively affected by the Orphans' Court's decision to set aside its agreements with the Personal Representative. Clearly we have recognized a contract purchaser of real property has a significant interest in the enforcement of the contracts under the doctrine of equitable conversion by which "the contract purchaser of realty becomes the equitable owner of the property, while the vendor retains a bare legal title." *Watson v. Watson,* 304 Md. 48, 60, 497 A.2d 794, 800 (1985); *Himmighoefer v. Medallion Industries, Inc.,* 302 Md. 270, 487 A.2d 282 (1985). Princess Builders's interests were "injuriously" affected by the order because the order divested Princess Builders of its right to purchase the lots as well as its interest as the equitable owner of the lots. Moreover, both the Personal Representative and Ms. Knight clearly recognized that Princess Builders had an interest in the Orphans' Court proceedings because they served the company with copies of their pleadings. Therefore, the Orphans' Court's actions had a "direct tendency to operate injuriously" with respect to Princess Builders's interest in the real property and, as such, Princess Builders had standing to seek review in the Circuit Court for Anne Arundel County.

### *The Enforceability of Princess Builders's Contracts*

■ Alternatively, Ms. Knight argues that the Circuit Court's decision should be reversed because there was no enforceable contract between the Estate and Princess Builders after August 31, 2003, because Princess Builders failed to satisfy the following contingency contained in the contract:

> This Contract is contingent on buyer obtaining a building permit for house of buyers choice [b]y August 31, 2003 or this contract is declared null and void and of no further effect with deposit being declared null and void and refunded as well. Thus, any Backup Contract could then become primary. Time being of the essence for Settlement date of Sept 9, 2003.

According to Ms. Knight, this clause "created a self-operative, terminating clause" that resulted in the termination of the agreements on September 1, 2003. Therefore, Ms. Knight argues that there was no effective contract between the Estate and Princess Builders at the time of the proceedings before the Orphans' Court or the Circuit Court. We determine that because the contingency was not included for Ms. Knight's benefit, she may not use it to annul the agreement.

In support of her position, Ms. Knight relies upon two decisions by this Court wherein the contingency at issue in the case benefitted the party who sought to avoid the agreement due to the other party's failure to satisfy the terms of the contingency. In *Metz v. Heflin*, 235 Md. 550, 201 A.2d 802 (1964), Ernest and Mabel Heflin entered into a written agreement with Nathan Metz to sell four and a half acres of land in Montgomery County. As part of the terms of the contract, Mr. Metz agreed to apply for rezoning and the Heflins agreed to take back a first deed of trust for $70,000. *Id.* at 552, 201 A.2d at 802. It further provided that in the event that the rezoning did not occur by April 30, 1963, the contract would be void. *Id.* The rezoning benefitted both Mr. Metz, who sought to develop the land, and the Heflins because it would have increased the worth of the property. Mr. Metz was unable to secure rezoning until May 7 and three days later, demanded

settlement. *Id.* at 552, 201 A.2d at 802–03. The Heflins informed Mr. Metz "that the contract provided that it would expire and become void if zoning did not take place by April 30, 1963, and since zoning had not taken place by that date 'the contract has expired and is now void and of no legal effect.' " *Id.*, 201 A.2d at 803. Mr. Metz filed suit for specific performance of the contract, which the trial court denied. He subsequently filed an appeal with this Court.

Having concluded that the contingency inured to the Heflins' benefit as holders of a security interest in the property, we reasoned that as benefitting parties, nonperformance of the contingency had to be excused or waived by both Mr. Metz and the Heflins. *Id.* at 552–54, 201 A.2d at 803. Therefore, we affirmed the decision of the trial court.

In *Jones v. Saah*, 261 Md. 340, 275 A.2d 165 (1971), the Saahs entered into contracts for the sale of real property with Mr. Jones and Mr. Ray, the appellants, which provided that Mr. Jones and Mr. Ray would sell the lots to the Saahs and take back a first deed of trust to finance the purchases. The contracts provided the following contingency:

> In the event said zoning is not secured by May 30, 1968, this contract shall become Null and Void and both parties shall be relieved of any further liability, and in that event the deposit of Two Thousand Dollars ($2,000.00) shall be returned to purchaser without further question.

*Id.* at 341–42, 275 A.2d at 165. When the Saahs informed Mr. Jones and Mr. Ray that they intended to move forward with settlement, Mr. Jones and Mr. Ray failed to appear and informed the broker that the contract were null and void and that the deposit should be returned to the Saahs. The Saah's filed suit seeking specific performance of the contracts and argued that because the contingency inured to their benefit, they could waive its performance. The Circuit Court for Montgomery County granted the Saahs specific performance and Mr. Jones and Mr. Ray appealed.

Relying upon our reasoning in *Metz*, we noted that the fact that the sellers were to "take back a deed of trust which gave

[them] a substantial interest in the property ... any change in the zoning to a greater density (to a commercial use in our case) would benefit the sellers as much as the purchasers." *Id.* at 344, 275 A.2d at 166–67. Therefore, we concluded that because the sellers benefitted from the contingency as well as the purchasers, the purchasers could not unilaterally waive the condition and the agreements were void. *Id.* at 344, 275 A.2d at 167.

These cases differ fundamentally from the case at bar. The contingency at issue patently was not made for Ms. Knight's benefit, but rather, solely benefitted Princess Builders as evidenced by the fact that it was included at the company's behest and that neither the Estate nor the Personal Representative would have an interest in whether Princess Builders was able to construct a house on the property. Moreover, Ms. Knight was not prejudiced by the enforcement of the agreements between Princess Builders and the Personal Representative because she did not act in reliance on the contract being voided. Therefore, because the contingency did not benefit Ms. Knight and she was not prejudiced by Princess Builders's failure to fulfill the condition, she may not use the nonperformance of its terms to render the contract void.

### Conclusion

We conclude that Princess Builders properly may be considered a "party" as the term is used in the context on those statutes because the order of the Orphans' Court for Anne Arundel County has a direct tendency to adversely affect its interests. Moreover, we determine that Ms. Knight does not have the right to challenge the enforceability of the contracts between Princess Builders and the Personal Representative based on the failure to fulfill a contingency because the contingency was not made for her benefit nor was she prejudiced by the enforcement of the contract. Therefore, we affirm the judgment of the Court of Special Appeals.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY PETITIONER.*